# EXHIBIT 3

**Time Charter Party**
**LONDON** *22nd Sept 2008*

IT IS THIS DAY AGREED between *MESSRS. LEON TRADING SA*                                          1
of                                    (hereinafter referred to as "Owners"), being owners        2
of the good motor/steam\* vessel called *"LEON II". Charterers have the liberty to change the name of*   3
*the vessel to M.Y. ADRIATIC at Charterer's expense and time. Change of name to be done while*
*the ship is still at the yard and Charterers to pay for change of name maximum Usd. 5.000,00 (five*
*thousand Usd. only)*
(hereinafter referred to as "the vessel") described as per *Clause 1* hereof and *MESSRS. M.Y. SHIPPING*   4
*PRIVATE LTD.*
of *INDIA*                                                                                        5
                                      (hereinafter referred to as "Charterers"):

| | |
|---|---|
| Description<br>And<br>Condition of<br>Vessel | 1. At the date of delivery of the vessel under this charter and throughout the charter period:   6<br>  (a) she shall be classed by a Classification Society which is a member of the International   7<br>     Association of Classification Societies;   8<br>  (b) she shall be in every way fit to carry crude-petroleum-and/or-its-products *see clause 69 hereof*;   9<br>  (c) she shall be tight, staunch, strong, in good order and condition, and in every way fit for the   10<br>     service, with her machinery, boilers, hull and other equipment (including but not limited to hull   11<br>     stress calculator, radar, computers and computer systems) in a good and efficient state;   12<br>  (d) her tanks, valves and pipelines shall be oil-tight;   13<br>  (e) she shall be in every way fitted for burning, in accordance with the grades specified in Clause   14<br>     29 hereof:   15<br>      (i) at sea, fuel oil for main propulsion and fuel-oil/marine diesel oil\* for auxiliaries;   16<br>      (ii) in port, fuel-oil/marine diesel oil\* for auxiliaries;   17<br>  (f) she shall comply with the regulations in force so as to enable her to pass through the Suez and   18<br>     Panama Canals by day and night without delay;   19<br>  (g) she shall have on board all certificates, documents and equipment required from time to time by   20<br>     any applicable law to enable her to perform the service without delay;   21<br>  (h) she shall comply with the description in the *Timecharter Description* OCIMF Harmonised Vessel   22<br>     Particulars Questionnaire appended<br>     hereto as Appendix A, provided however that if there is any conflict between the provisions of   23<br>     this questionnaire and any other provision, including this Clause 1, of this charter such other   24<br>     provisions shall govern;   25<br>  (i) her ownership structure, flag, registry, classification society and management company shall   26<br>     not be changed;   27 |
| Safety<br>Management |   (j) Owners will operate:   28<br>     (i) a safety management system certified to comply with the International Safety   29<br>      Management Code (ISM Code) for the Safe Operation of Ships and for   30<br>      Pollution Prevention;   31<br>     (ii) a documented safe working procedures system (including procedures for the   32<br>      identification and mitigation of risks);   33<br>     (iii) a documented environmental management system;   34<br>     (iv) documented accident/incident reporting system compliant with flag state   35<br>      requirements.   36<br>  (k) Owners shall submit to Charterers a monthly written report detailing all accidents/incidents and   37<br>     environmental reporting requirements, in accordance with the Shell Safety and Environmental   38<br>     Monthly Reporting Template appended hereto as Appendix B;   39<br>  (l) Owners shall maintain Health Safety Environmental (HSE) records sufficient to demonstrate   40<br>     compliance with the requirements of their HSE system and of this charter. Charterers reserve   41<br>     the right to confirm compliance with HSE requirements by audit of Owners.   42<br>  (m) Owners will arrange at their expense for a SIRE inspection to be carried out at intervals of six   43<br>     months plus or minus thirty days, *subject to vessel's schedule and trading area/pattern and to*   44<br>     *availability of sire inspector (see also Clause 65)*. |
| Shipboard<br>Personnel<br>And their<br>Duties | 2. (a) At the date of delivery of the vessel under this charter and throughout the charter period:   45<br>     (i) she shall have a full and efficient complement of master, officers and crew for a   46<br>      vessel of her tonnage, who shall in any event be not less than the number required   47<br>      by the laws of the flag state and who shall be trained to operate the vessel and her   48<br>      equipment competently and safely;   49<br>     (ii) all shipboard personnel shall hold valid certificates of competence in accordance   50<br>      with the requirements of the law of the flag state;   51 |

This Charter Party is a computer generated SHELLTIME 4 form printed using software which is the copyright of STRATEGIC DATAWORKS LTD. Any insertion or deletion to the form must be
clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the text of the original approved document shall apply. STRATEGIC
DATAWORKS LTD assume no responsibility for any loss or damage caused as a result of any discrepancies between the original approved document and this document.
WWW.STRATEGICDATAWORKS.CO.UK

|  |  |
|---|---|
| (iii) all shipboard personnel shall be trained in accordance with the relevant provisions of the International Convention on Standards of Training, Certification and Watchkeeping for Seafarers, 1995 or any additions, modifications or subsequent versions thereof; | 52 53 54 55 |

* Delete as appropriate

(iv) there shall be on board sufficient personnel with a good working knowledge of the English language to enable cargo operations at loading and discharging places to be carried out efficiently and safely and to enable communications between the vessel and those loading the vessel or accepting discharge there from to be carried out quickly and efficiently; — 56 57 58 59 60

(v) the terms of employment of the vessels staff and crew will always remain acceptable to The International Transport Workers Federation and the vessel will at all times carry a Blue Card; *see Clause 71* — 61 62 63

(vi) the nationality of the vessels officers given in the *Time Charter Description* OCIMF Vessel Particulars Questionnaire referred to in Clause 1(h) *provided on delivery* will not change without Charterers prior agreement. — 64 65 66

(b) Owners guarantee that throughout the charter service the master shall with the vessel's officers and crew, unless otherwise ordered by Charterers; — 67 68

(i) prosecute all voyages with the utmost despatch; — 69

(ii) render all customary assistance; and — 70

(iii) load and discharge cargo as rapidly as possible when required by Charterers or their agents to do so, by night or by day, but always in accordance with the laws of the place of loading or discharging (as the case may be) and in each case in accordance with any applicable laws of the flag state. — 71 72 73 74

**Duty to Maintain**

3. (a) Throughout the charter service Owners shall, whenever the passage of time, wear and tear or any event (whether or not coming within Clause 27 hereof) requires steps to be taken to maintain or restore the conditions stipulated in Clauses 1 and 2(e), exercise due diligence so to maintain or restore the vessel. — 75 76 77 78

(b) If at any time whilst the vessel is on hire under this charter the vessel fails to comply with the requirements of Clauses 1, 2(a) or 10 then hire shall be reduced to the extent necessary to indemnify Charterers for such failure. If and to the extent that such failure affects the time taken by the vessel to perform any services under this charter, hire shall be reduced by an amount equal to the value, calculated at the rate of hire, of the time so lost. — 79 80 81 82 83

Any reduction of hire under this sub-Clause (b) shall be without prejudice to any other remedy available to Charterers, but where such reduction of hire is in respect of time lost, such time shall be excluded from any calculation under Clause 24. — 84 85 86

(c) If Owners are in breach of their obligations under Clause 3(a), Charterers may so notify Owners in writing and if, after the expiry of 30 days following the receipt by Owners of any such notice, Owners have failed to demonstrate to Charterers' reasonable satisfaction the exercise of due diligence as required in Clause 3(a), the vessel shall be off-hire, and no further hire payments shall be due, until Owners have so demonstrated that they are exercising such due diligence. — 87 88 89 90 91

(d) Owners shall advise Charterers immediately, in writing, should the vessel fail an inspection by, but not limited to, a governmental and/or port state authority, and/or terminal and/or major charterer of similar tonnage. Owners shall simultaneously advise Charterers of their proposed course of action to remedy the defects which have caused the failure of such inspection. — 92 93 94 95

(e) If, in Charterers reasonably held view: — 96

failure of an inspection, or; — 97

any finding of an inspection; — 98

referred to in Clause 3 (d), prevents normal commercial operations then Charterers have the option to place the vessel off-hire from the date and time that the vessel fails such inspection, or becomes commercially inoperable, until the date and time that the vessel passes a re-inspection by the same organisation, or becomes commercially operable, which shall be in a position no less favourable to Charterers than at which she went off-hire. — 99 100 101 102 103

(f) Furthermore, at any time while the vessel is off-hire under this Clause 3 (with the exception of lause 3(e)(ii)), Charterers have the option to terminate this charter by giving notice in writing with effect from the date on which such notice of termination is received by Owners or from any later date stated in such notice. This sub-Clause (f) is without prejudice to any rights of Charterers or obligations of Owners under this charter or otherwise (including without limitation Charterers' rights under Clause 21 hereof). — 104 105 106 107 108 109

**Period Trading**

4. (a) Owners agree to let and Charterers agree to hire the vessel for a period of *one year* plus or minus *15* days in Charterers option, commencing from the time and date of delivery — 110 111

This Charter Party is a computer generated SHELLTIME 4 form printed using software which is the copyright of STRATEGIC DATAWORKS LTD. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the text of the original approved document shall apply. STRATEGIC DATAWORKS LTD assume no responsibility for any loss or damage caused as a result of any discrepancies between the original approved document and this document.
WWW.STRATEGICDATAWORKS.CO.UK

| | | |
|---|---|---|
| Limits and | of the vessel, *optional year to be declared by Charterers latest 60 days prior to expiry of first year commencing fom vessel's delivery date. If such date falls during London weekend or holiday then same to be declared next working day,* for the purpose of carrying all lawful merchandise (subject always to <u>Clause 28</u>) | 112 |
| Safe Places | including in particular; | 113 |
| | *list of cargoes to be agreed but always in accordance with vessel's Certificate of Fitness and coating resistance list and as permitted by vessel's class society and cargo equipment manufacturer lists as well as in accordance with vessel's stability trim and stress requirements and always harmless to vessels tanks, coatings, pumps, lines, gaskets and fittings. Vessel to be redelivered to Owners with last three (3) cargoes clean uni, und 2.5 NPA_* | 114 |
| | in any part of the world *excluding United Nations and E.U. sanctioned and or Embargo countries, Ethiopia, Erithrea, Somalia, Yemen, North Korea, Lebanon, Cuba, Israel, Iraq, Turkish occupied Cyprus, Sierra Leone, Liberia,* as Charterers shall direct, subject to the limits of the current ~~British~~ *International* | 115 |
| | Institute Warranties and any subsequent amendments thereof *and subject to Clauses 62 and 68.* ~~Notwithstanding the foregoing,~~ | 116 |
| | ~~but subject to Clause 35, Charterers may order the vessel to ice-bound waters or to any part of~~ | 117 |
| | ~~the world outside such limits provided that Owners consent thereto (such consent not to be~~ | 118 |
| | ~~unreasonably withheld) and that Charterers pay for any insurance premium required by the~~ | 119 |
| | ~~vessel's underwriters as a consequence of such order.~~ | 120 |
| | (b) Any time during which the vessel is off-hire under this charter may be added to the charter period in Charterers option up to the total amount of time spent off-hire. In such cases the rate of hire will be that prevailing at the time the vessel would, but for the provisions of this Clause, have been redelivered. | 121 122 123 124 |
| | (c) Charterers shall use due diligence to ensure that the vessel is only employed between and at safe places (which expression when used in this charter shall include ports, berths, wharves, docks, anchorages, submarine lines, alongside vessels or lighters, and other locations including locations at sea) where she can safely lie always afloat. Notwithstanding anything contained in this or any other clause of this charter, Charterers do not warrant the safety of any place to which they order the vessel and shall be under no liability in respect thereof except for loss or damage caused by their failure to exercise due diligence as aforesaid. Subject as above, the vessel shall be loaded and discharged at any places as Charterers may direct, provided that Charterers shall exercise due diligence to ensure that any ship-to-ship transfer operations shall conform to standards not less than those set out in the latest published edition of the ICS/OCIMF Ship-to-Ship Transfer Guide. | 125 126 127 128 129 130 131 132 133 134 135 |
| | (d) Unless otherwise agreed, the vessel shall be delivered by Owners *on dropping outward pilot off builder's yard (STX South Korea)* at any *time day and night Sunday and Holidays included* ~~port in~~ | 136 137 |
| | | 138 |
| | at Owners' option and redelivered to Owners *always DLOSP worldwide* ~~dropping outward pilot at a port in~~ | 139 |
| | ~~,~~ | 140 |
| | at Charterers' option. *At redelivery place vessel to have enough bunkers to call nearest bunkering port.* | 141 |
| | (e) The vessel will deliver with last cargo(es) of and     will redeliver with last cargo(es) of | 142 |
| | (f) Owners are required to give Charterers *15, 10, 7, 5, 3, 1* days prior notice of delivery and Charterers are required to give Owners *30, 15, 10, 7, 5, 3, 1* days prior notice of redelivery. | 143 144 |
| Laydays/ Cancelling | 5. The vessel shall not be delivered to Charterers before *10th (00.01 hrs) October 2008* and Charterers shall have the option of cancelling this charter if the vessel is not ready and at their disposal on or before *30th (23.59 hrs) October 2008.* | 145 146 147 |
| Owners to Provide | 6. Owners undertake to provide and to pay for all provisions, wages (including but not limited to all overtime payments) *Charterers to pay Usd. 600 per month for crew overtime,* and shipping and discharging fees and all other expenses of the master, officers | 148 149 |
| | and crew; also, except as provided in <u>Clauses 4</u> and <u>34</u> hereof, for all insurance on the vessel, for all deck, cabin and engine-room stores, and for water; for all drydocking, overhaul, maintenance and repairs to the vessel; and for all fumigation expenses and de-rat certificates. Owners' obligations under this <u>Clause 6</u> extend to all liabilities for customs or import duties arising at any time during the performance of this charter in relation to the personal effects of the master, officers and crew, and in relation to the stores, provisions and other matters aforesaid which Owners are to provide and pay for and Owners shall refund to Charterers any sums Charterers or their agents may have paid or been | 150 151 152 153 154 155 156 |

This Charter Party is a computer generated SHELLTIME 4 form printed using software which is the copyright of STRATEGIC DATAWORKS LTD. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the text of the original approved document shall apply. STRATEGIC DATAWORKS LTD assume no responsibility for any loss or damage caused as a result of any discrepancies between the original approved document and this document.
WWW.STRATEGICDATAWORKS.CO.UK

|  |  |
|---|---|
| | compelled to pay in respect of any such liability. Any amounts allowable in general average for wages | 157 |
| | and provisions and stores shall be credited to Charterers insofar as such amounts are in respect of a | 158 |
| | Period when the vessel is on-hire. | 159 |

Charterers to Provide
7. (a) Charterers shall provide and pay for all fuel (except fuel used for domestic services), towage   160
and pilotage and shall pay agency fees, port charges, commissions, expenses of loading and   161
unloading cargoes, canal dues *all taxes and/or dues and/or fees on vessel arising as result of its*   162
*employment, and or fees on freight, hire, sub-charter hire, cargo and bunkers are to be for*
*Charterer's account* and all charges other than those payable by Owners in
accordance with Clause 6 hereof, provided that all charges for the said items shall be for   163
Owners' account when such items are consumed, employed or incurred for Owners' purposes or   164
while the vessel is off-hire (unless such items reasonably relate to any service given or distance   165
made good and taken into account under Clause 21 or 22); and provided further that any fuel   166
used in connection with a general average sacrifice or expenditure shall be paid for by Owners.   167
(b) In respect of bunkers consumed for Owners purposes these will be charged on each occasion   168
by Charterers on a first-in-first-out basis valued on the prices actually paid by Charterers.   169
(c) If the trading limits of this charter include ports in the United States of America and/or its   170
protectorates then Charterers shall reimburse Owners for port specific charges relating to   171
additional premiums charged by providers of oil pollution cover, when incurred by the vessel   172
calling at ports in the United States of America and/or its protectorates in accordance with   173
Charterers orders.   174

Rate of
8. Subject as herein provided, Charterers shall pay *monthly in advance* for the use and hire of the vessel at the   175
rate of United

Hire
States Dollars *12.500.=* per day, and pro rata for a day of a day, from   176
the time and date of her delivery (local time) to Charterers until the time and date of redelivery (local   177
time) to Owners *for the first year; United States Dollars 12.800.= per day, and pro rata for any*   178
*part of a day for optional year, less 1.25% total commission. Charterers to pay Usd. 600 per*
*month for crew overtime. Communications/representaton at United States Dollars 600 per*
*month, and pro rata for any part of a month.*

Payment of
Hire
9. Subject to Clause 3 (c) and 3 (e), payment of hire shall be made in immediately available funds   179
to:   180
  181
————————

Account:   182
  183
  184
————————

in United States Dollars per-calendar monthly in advance, less:   185
(i) any hire paid which Charterers reasonably estimate to relate to off-hire periods, and;   186
(ii) any amounts disbursed on Owners' behalf, any advances and commission thereon, and   187
charges which are for Owners' account pursuant to any provision hereof, and;   188
(iii) any amounts due or reasonably estimated to become due to Charterers under Clause 3 (c)   189
or 24 hereof,   190
any such adjustments to be made at the due date for the next monthly payment after the facts   191
have been ascertained. Charterers shall not be responsible for any delay or error by Owners'   192
bank in crediting Owners' account provided that Charterers have made proper and timely   193
payment.   194
In default of such proper and timely payment:   195
(a) Owners shall notify Charterers of such default and Charterers shall within seven days of receipt   196
of such notice pay to Owners the amount due, including interest, failing which Owners may   197
withdraw the vessel from the service of Charterers without prejudice to any other rights Owners   198
may have under this charter or otherwise; and;   199
(b) Interest on any amount due but not paid on the due date shall accrue from the day after that date   200
up to and including the day when payment is made, at a rate per annum which shall be 1%   201
above the U.S. Prime Interest Rate as published by the Chase Manhattan Bank in New York at   202
12.00 New York time on the due date, or, if no such interest rate is published on that day, the   203
interest rate published on the next preceding day on which such a rate was so published,   204
computed on the basis of a 360 day year of twelve 30-day months, compounded semi-annually.   205

Space Available to Charterers
10. The whole reach, burthen and decks on the vessel and any passenger accommodation (including   206
Owners' suite) shall be at Charterers' disposal, reserving only proper and sufficient space for the   207
vessel's master, officers, crew, tackle, apparel, furniture, provisions and stores, provided that the   208
weight of stores on board shall not, unless specially agreed, exceed *50* tonnes *excluding fresh water and*   209
*bunker and lub oil* at any time during the
charter period.   210

Segregated Ballast
11. In connection with the Council of the European Union Regulation on the implementation of IMO   211
Resolution A747(18) Owners will ensure that the following entry is made on the International Tonnage   212

This Charter Party is a computer generated SHELLTIME 4 form printed using software which is the copyright of STRATEGIC DATAWORKS LTD. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the text of the original approved document shall apply. STRATEGIC DATAWORKS LTD assume no responsibility for any loss or damage caused as a result of any discrepancies between the original approved document and this document
WWW.STRATEGICDATAWORKS.CO.UK

| | | |
|---|---|---|
| | Certificate (1969) under the section headed "remarks": | 213 |

"The segregated ballast tanks comply with the Regulation 13 of Annex 1 of the International 214
Convention for the prevention of pollution from ships, 1973, as modified by the Protocol of 1978 215
relating thereto, and the total tonnage of such tanks exclusively used for the carriage of segregated 216
water ballast is      The reduced gross tonnage which should be used for the calculation 217
of tonnage based fees is      ". 218

**Instructions And Logs**

12. Charterers shall from time to time give the master all requisite instructions and sailing directions, and 219
the master shall keep a full and, correct log of the voyage or voyages, which Charterers or their agents 220
may inspect as required. The master shall when required furnish Charterers or their agents with a true 221
copy of such log and with properly completed loading and discharging port sheets and voyage reports 222
for each voyage and other returns as Charterers may require. Charterers shall be entitled to take copies 223
at Owners' expense of any such documents which are not provided by the master. 224

**Bills of Lading**

13. (a) The master (although appointed by Owners) shall be under the orders and direction of 225
Charterers as regards employment of the vessel, agency and other arrangements, and shall sign 226
Bills of Lading as Charterers or their agents may direct (subject always to Clauses 35 (a) and 227
40) without prejudice to this charter. Charterers hereby indemnify Owners against all 228
consequences or liabilities that may arise; 229
(i)   from signing Bills of Lading in accordance with the directions of Charterers or their 230
agents, to the extent that the terms of such Bills of Lading fail to conform to the 231
requirements of this charter, or (except as provided in Clause 13 (b) from the master 232
otherwise complying with Charterers' or their agents' orders; 233
(ii)  from any irregularities in papers supplied by Charterers or their agents. 234

(b) If Charterers by telex, facsimile or other form of written communication that specifically refers 235
To this Clause request Owners to discharge a quantity of cargo either without Bills of Lading 236
and/or at a discharge place other than that named in a Bill of Lading and/or that is different 237
from the Bill of Lading quantity, then Owners shall discharge such cargo in accordance with 238
Charterer's instructions in consideration of receiving the following indemnity which shall be 239
deemed to be given by Charterers on each and every such occasion and which is limited in 240
value to 200% of the CIF value of the cargo carried on board; 241
"(i) Charterers shall indemnify Owners and Owners' servants and agents in respect of any 242
liability loss or damage of whatsoever nature (including legal costs as between attorney or 243
solicitor and client and associated expenses) which Owners may sustain by reason of delivering 244
such cargo in accordance with Charterers' request. 245
(ii)  If any proceeding is commenced against Owners or any of Owners' servants or agents in 246
connection with the vessel having delivered cargo in accordance with such request, Charterers 247
shall provide Owners or any of Owners' servants or agents from time to time on demand with 248
sufficient funds to defend the said proceedings. 249
(iii)  If the vessel or any other vessel or property belonging to Owners should be arrested or 250
detained, or if the arrest or detention thereof should be threatened, by reason of discharge in 251
accordance with Charterers instruction as aforesaid, Charterers shall provide on demand such 252
bail or other security as may be required to prevent such arrest or detention or to secure the 253
release of such vessel or property and Charterers shall indemnify Owners in respect of any loss, 254
damage or expenses caused by such arrest or detention whether or not same may be justified. 255
(iv)  Charterers shall, if called upon to do so at any time while such cargo is in Charterers' 256
possession, custody or control, redeliver the same to Owners. 257
(v)  As soon as all original Bills of Lading for the above cargo which name as discharge port the 258
place where delivery actually occurred shall have arrived and/or come into Charterers' 259
possession, Charterers shall produce and deliver the same to Owners whereupon Charterers' 260
liability hereunder shall cease. 261
Provided however, if Charterers have not received all such original Bills of Lading by 24.00 262
hours on the day 36 calendar months after the date of discharge, that this indemnity shall 263
terminate at that time unless before that time Charterers have received from Owners written 264
notice that: 265
aaa) Some person is making a claim in connection with Owners delivering cargo pursuant to 266
Charterers request or, 267
bbb) Legal proceedings have been commenced against Owners and/or carriers and/or 268
Charterers and/or any of their respective servants or agents and/or the vessel for the same 269
reason. 270
When Charterers have received such a notice, then this indemnity shall continue in force until 271
such claim or legal proceedings are settled. Termination of this indemnity shall not prejudice 272
any legal rights a party may have outside this indemnity. 273
(vi)  Owners shall promptly notify Charterers if any person (other than a person to whom 274
Charterers ordered cargo to be delivered) claims to be entitled to such cargo and/or if the vessel 275
or any other property belonging to Owners is arrested by reason of any such discharge of cargo. 276
vii) This indemnity shall be governed and construed in accordance with the English law and 277
each and any dispute arising out of or in connection with this Indemnity shall be subject to the 278

This Charter Party is a computer generated SHELLTIME 4 form printed using software which is the copyright of STRATEGIC DATAWORKS LTD. Any insertion or deletion to the form must be
clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the text of the original approved document shall apply. STRATEGIC
DATAWORKS LTD assume no responsibility for any loss or damage caused as a result of any discrepancies between the original approved document and this document.
WWW.STRATEGICDATAWORKS.CO.UK

|  |  |  |
|---|---|---|
|  | jurisdiction of the High Court of Justice of England. | 279 |
|  | (c) Owners warrant that the Master will comply with orders to carry and discharge against one or more Bills of Lading from a set of original negotiable Bills of Lading should Charterers so require. | 280 281 282 |
| Conduct Vessel's Personnel | 14. If Charterers complain of the conduct of the master or any of the officers or crew, Owners shall immediately investigate the complaint. If the complaint proves to be well founded, Owners shall, without *undue* delay, make a change in the appointments and Owners shall in any event communicate the result of their investigations to Charterers as soon as possible. | 283 284 285 286 |
| Bunkers at Delivery and Redelivery | 15. Charterers shall accept and pay for all bunkers on board at the time of delivery, and Owners shall on redelivery (whether it occurs at the end of the charter or on the earlier termination of this charter) accept and pay for all bunkers remaining on board, at the price actually paid, on a first-in-first-out basis. Such prices are to be supported by paid invoices. | 287 288 289 290 |
|  | Vessel to be delivered to and redelivered from the charter with, at least, a quantity of bunkers on board sufficient to reach the nearest main bunkering port. | 291 292 |
|  | Notwithstanding anything contained in this charter all bunkers on board the vessel shall, throughout the duration of this charter, remain the property of Charterers and can only be purchased on the terms specified in the charter at the end of the charter period or, if earlier, at the termination of the charter. | 293 294 295 296 |
| Stevedores Pilots, Tugs | 16. Stevedores, when required, shall be employed and paid by Charterers, but this shall not relieve Owners from responsibility at all times for proper stowage, which must be controlled by the master who shall keep a strict account of all cargo loaded and discharged. Owners hereby indemnify Charterers, their servants and agents against all losses, claims, responsibilities and liabilities arising in any way whatsoever from the employment of pilots, tugboats or stevedores, who although employed by Charterers shall be deemed to be the servants of and in the service of Owners and under their instructions (even if such pilots, tugboat personnel or stevedores are in fact the servants of Charterers their agents or any affiliated company); provided, however, that; | 297 298 299 300 301 302 303 304 |
|  | (a) the foregoing indemnity shall not exceed the amount to which Owners would have been entitled to limit their liability if they had themselves employed such pilots, tugboats or stevedores, and; | 305 306 307 |
|  | (b) Charterers shall be liable for any damage to the vessel caused by or arising out of the use of stevedores, fair wear and tear excepted, to the extent that Owners are unable by the exercise of due diligence to obtain redress therefor from stevedores. | 308 309 310 |
| Super-<br>Numeraries | 17. Charterers may send representatives *and supercargo* in the vessel's available accommodation upon any voyage made | 311 |
|  | under this charter, Owners finding provisions and all requisites as supplied to officers, except alcohol. | 312 |
|  | Charterers paying at the rate of United States Dollars *25 (twenty five)* 15 (fifteen) per day for each representative *and supercargo* while | 313 |
|  | on board the vessel. *The supercargo may assist and advise the vessel in tank cleaning, loading and discharging operation, but will otherwise not interfere. The supercargo is onboard strictly in an advisory capacity. Charterers to sign Owners' P&I Club letter of indemnity prior boarding.* | 314 |
| Sub-letting/ Assignment/ Novation | 18. Charterers may sub-let the vessel, but shall always remain responsible to Owners for due fulfilment of this charter. Additionally Charterers may assign or novate this charter to any company of the Royal Dutch/Shell Group of Companies. | 315 316 317 |
| Final Voyage | 19. If when a payment of hire is due hereunder Charterers reasonably expect to redeliver the vessel before the next payment of hire would fall due, the hire to be paid shall be assessed on Charterers' reasonable estimate of the time necessary to complete Charterers' programme up to redelivery, and from which estimate Charterers may deduct amounts due or reasonably expected to become due for; | 318 319 320 321 |
|  | (a) disbursements on Owners' behalf or charges for Owners' account pursuant to any provision hereof, and; | 322 323 |
|  | (b) bunkers on board at redelivery pursuant to Clause 15. | 324 |
|  | Promptly after redelivery any overpayment shall be refunded by Owners or any underpayment made good by Charterers. | 325 326 |
|  | If at the time this charter would otherwise terminate in accordance with Clause 4 the vessel is on a ballast voyage to a port of redelivery or is upon a laden voyage, Charterers shall continue to have the use of the vessel at the same rate and conditions as stand herein for as long as necessary to complete such ballast voyage, or to complete such laden voyage and return to a port of redelivery as provided by this charter, as the case may be. | 327 328 329 330 331 |
| Loss of Vessel | 20. Should the vessel be lost, this charter shall terminate and hire shall cease at noon on the day of her loss; should the vessel be a constructive total loss, this charter shall terminate and hire shall cease at noon on the day on which the vessel's underwriters agree that the vessel is a constructive total loss; should the vessel be missing, this charter shall terminate and hire shall cease at noon on the day on which she was last heard of. Any hire paid in advance and not earned shall be returned to Charterers and Owners shall reimburse Charterers for the value of the estimated quantity of bunkers m on board at the time of termination, at the price paid by Charterers at the last bunkering port. | 332 333 334 335 336 337 338 |
| Off-hire | 21. (a) On each and every occasion that there is loss of time (whether by way of interruption in the | 339 |

This Charter Party is a computer generated SHELLTIME 4 form printed using software which is the copyright of STRATEGIC DATAWORKS LTD. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the text of the original approved document shall apply. STRATEGIC DATAWORKS LTD assume no responsibility for any loss or damage caused as a result of any discrepancies between the original approved document and this document.
WWW.STRATEGICDATAWORKS.CO.UK

|  |  | vessel's service or, from reduction in the vessel's performance, or in any other manner); | 340 |
|--|--|--|--|
|  | (i) | due to deficiency of personnel or stores; repairs; gas-freeing for repairs; time in and waiting to enter dry dock for repairs; breakdown (whether partial or total) of machinery, boilers or other parts of the vessel or her equipment (including without limitation tank coatings); overhaul, maintenance or survey; collision, stranding, accident or damage to the vessel; or any other similar cause preventing the efficient working of the vessel; and ~~such cause continues for more than three consecutive hours (if resulting from interruption in the vessel's service) or cumulates to more than three hours (if resulting from partial loss of service)~~; or; | 341 342 343 344 345 346 347 348 |
|  | (ii) | due to industrial action, refusal to sail, breach of orders or neglect of duty on the part of the master, officers or crew; or; | 349 350 |
|  | (iii) | for the purpose of obtaining medical advice or treatment for or landing any sick or injured person (other than a Charterers' representative carried under Clause 17 hereof) or for the purpose of landing the body of any person (other than a Charterers' representative), ~~and such loss continues for more than three consecutive hours~~; or; | 351 352 353 354 |
|  | (iv) | due to any delay in quarantine arising from the master, officers or crew having had communication with the shore at any infected area without the written consent or instructions of Charterers or their agents, or to any detention by customs or other authorities caused by smuggling or other infraction of local law on the part of the master, officers, or crew; or; | 355 356 357 358 359 |
|  | (v) | due to detention of the vessel by authorities at home or abroad attributable to legal action against or breach of regulations by the vessel, the vessel's owners, or Owners (unless brought about by the act or neglect of Charterers); then; without prejudice to Charterers' rights under Clause 3 or to any other rights of Charterers hereunder, or otherwise, the vessel shall be off-hire from the commencement of such loss of time until she is again ready and in an efficient state to resume her service from a position not less favourable to Charterers than that at which such loss of time commenced; provided, however, that any service given or distance made good by the vessel whilst off-hire shall be taken into account in assessing the amount to be deducted from hire. | 360 361 362 363 364 365 366 367 368 |
| (b) | | If the vessel falls to proceed at any guaranteed speed pursuant to Clause 24, and such failure arises wholly or partly from any of the causes set out in Clause 21(a) above, then the period for which the vessel shall be off-hire under this Clause 21 shall be the difference between; | 369 370 371 |
|  | (i) | the time the vessel would have required to perform the relevant service at such guaranteed speed, and; | 372 373 |
|  | (ii) | the time actually taken to perform such service (including any loss of time arising from interruption in the performance of such service). For the avoidance of doubt, all time included under (ii) above shall be excluded from any computation under Clause 24. | 374 375 376 377 |
| (c) | | Further and without prejudice to the foregoing, in the event of the vessel deviating (which expression includes without limitation putting back, or putting into any port other than that to which she is bound under the instructions of Charterers) for any cause or purpose mentioned in Clause 21(a), the vessel shall be off-hire from the commencement of such deviation until the time when she is again ready and in an efficient state to resume her service from a position not less favourable to Charterers than that at which the deviation commenced, provided, however, that any service given or distance made good by the vessel whilst so off-hire shall be taken into account in assessing the amount to be deducted from hire. If the vessel, for any cause or purpose mentioned in Clause 21 (a), puts into any port other than the port to which she is bound on the instructions of Charterers, the port charges, pilotage and other expenses at such port shall be borne by Owners. Should the vessel be driven into any port or anchorage by stress of weather hire shall continue to be due and payable during any time lost thereby. | 378 379 380 381 382 383 384 385 386 387 388 389 |
| (d) | | If the vessel's flag state becomes engaged in hostilities, and Charterers in consequence of such hostilities find it commercially impracticable to employ the vessel and have given Owners written notice thereof then from the date of receipt by Owners of such notice until the termination of such commercial impracticability the vessel shall be off-hire and Owners shall have the right to employ the vessel on their own account. | 390 391 392 393 394 |
| (e) | | Time during which the vessel is off-hire under this charter shall count as part of the charter period except where Charterers declare their option to add off-hire periods under Clause 4 (b)). | 395 396 |
| (f) | | All references to time in this charter party shall be references to local time except where otherwise stated. | 397 398 |

| Periodical | 22. (a) | Owners have the right and obligation to drydock the vessel at regular intervals of *60 months plus/minus 6 months and/or in case of emergency or class requirement.* | 399 |
|--|--|--|--|
| Drydocking | | On each occasion Owners shall propose to Charterers a date on which they wish to drydock the vessel, not less than *1 month, subject always to vessel's fixed program,* before such date, *unless three is an emergency case, and Owners shall nominate a port for such periodical drydocking and* Charterers shall offer a port for such | 400 401 |

This Charter Party is a computer generated SHELLTIME 4 form printed using software which is the copyright of STRATEGIC DATAWORKS LTD. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the text of the original approved document shall apply. STRATEGIC DATAWORKS LTD assume no responsibility for any loss or damage caused as a result of any discrepancies between the original approved document and this document.
WWW.STRATEGICDATAWORKS.CO.UK

| | | |
|---|---|---|
| | periodical drydocking and *Charterers* shall take all reasonable steps to make the vessel available as near to | 402 |
| | such date *and port* as practicable. | 403 |
| | Owners shall put the vessel in drydock at their expense as soon as practicable after Charterers place the vessel at Owners' disposal clear of cargo other than tank washings and residues. | 404 / 405 |
| | Owners shall be responsible for and pay for the disposal into reception facilities of such tank washings and residues and shall have the right to retain any monies received therefor, without prejudice to any claim for loss of cargo under any Bill of Lading or this charter. | 406 / 407 / 408 |
| (b) | If a periodical drydocking is carried out in the port offered by Charterers (which must have suitable accommodation for the purpose and reception facilities for tank washings and residues), the vessel shall be off-hire from the time she arrives at such port until drydocking is completed and she is in every way ready to resume Charterers' service and is at the position at which she went off-hire or a position no less favourable to Charterers, whichever she first attains. However; | 409 / 410 / 411 / 412 / 413 / 414 |
| (i) | provided that Owners exercise due diligence in gas-freeing, any time lost in gas-freeing to the standard required for entry into drydock for cleaning and painting the hull shall not count as off-hire, whether lost on passage to the drydocking port or after arrival there (notwithstanding Clause 21), and; | 415 / 416 / 417 / 418 |
| (ii) | any additional time lost in further gas-freeing to meet the standard required for hot work or entry into cargo tanks shall count as off-hire, whether lost on passage to the drydocking port or after arrival there. | 419 / 420 / 421 |
| | Any time which, but for sub-Clause (i) above, would be off-hire, shall not be included in any calculation under Clause 24. | 422 / 423 |
| | The expenses of gas-freeing, including without limitation the cost of bunkers, shall be for Owners account. | 424 / 425 |
| (c) | If Owners require the vessel, instead of proceeding to the offered port, to carry out periodical drydocking at a special port selected by them, the vessel shall be off-hire from the time when she is released to proceed to the special port until she next presents for loading in accordance with Charterers' instructions, provided, however, that Charterers shall credit Owners with the time which would have been taken on passage at the service speed had the vessel not proceeded to drydock. All fuel consumed shall be paid for by Owners but Charterers shall credit Owners with the value of the fuel which would have been used on such notional passage calculated at the guaranteed daily consumption for the service speed, and shall further credit Owners with any benefit they may gain in purchasing bunkers at the special port. | 426 / 427 / 428 / 429 / 430 / 431 / 432 / 433 / 434 |
| (d) | Charterers shall, insofar as cleaning for periodical drydocking may have reduced the amount of tank-cleaning necessary to meet Charterers' requirements, credit Owners with the value of any bunkers which Charterers calculate to have been saved thereby, whether the vessel drydocks at an offered or a special port. | 435 / 436 / 437 / 438 |

Ship Inspection
23. Charterers shall have the right at any time during the charter period to make such inspection of the vessel as they may consider necessary. This right may be exercised as often and at such intervals as Charterers in their absolute discretion may determine and whether the vessel is in port or on passage. 439 / 440 / 441

Owners affording all necessary co-operation and accommodation on board provided, however: 442
(a) that neither the exercise nor the non-exercise, nor anything done or not done in the exercise or non-exercise, by Charterers of such right shall in any way reduce the master's or Owners' authority over, or responsibility to Charterers or third parties for, the vessel and every aspect of her operation, nor increase Charterers' responsibilities to Owners or third parties for the same; and; 443 / 444 / 445 / 446 / 447
(b) that Charterers shall not be liable for any act, neglect or default by themselves, their servants or agents in the exercise or non-exercise of the aforesaid right. 448 / 449

Detailed Description and Performance
24. (a) Owners guarantee that the speed and consumption of the vessel shall be as follows:- *see clause 74 hereof* 450

*Owners warrant vessel's speed of* knots in laden condition and knots in ballast condition on 19 metric tons IFO for main engine.

| Average speed in knots | Maximum average bunker consumption per day | | |
|---|---|---|---|
| | main propulsion fuel oil/ diesel oil tonnes | auxiliaries fuel oil/diesel oil tonnes | |
| Laden | | | 451 / 452 / 453 / 454 |
| ——— | ——/—— | ——/—— | 455 |
| ——— | ——/—— | ——/—— | 456 |
| ——— | ——/—— | ——/—— | 457 |
| Ballast | | | 458 |
| ——— | ——/—— | ——/—— | 459 |
| ——— | ——/—— | ——/—— | 460 |
| ——— | ——/—— | ——/—— | 461 |

*As per vessel's estimated speed and consumptions given to Charterers.*

This Charter Party is a computer generated SHELLTIME 4 form printed using software which is the copyright of STRATEGIC DATAWORKS LTD. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the text of the original approved document shall apply. STRATEGIC DATAWORKS LTD assume no responsibility for any loss or damage caused as a result of any discrepancies between the original approved document and this document.
WWW.STRATEGICDATAWORKS.CO.UK

| | |
|---|---|
| The foregoing bunker consumptions are for all purposes except cargo heating and tank cleaning | 462 |
| and *ballasting and deballasting and* shall be pro-rated between the speeds shown. | 463 |
| The service speed of the vessel is ⟶ knots laden and ⟶ knots in ballast and in the absence | 464 |
| of Charterers' orders to the contrary the vessel shall proceed at the service speed. However if | 465 |
| more than one laden and one ballast speed are shown in the table above Charterers shall have | 466 |
| the right to order the vessel to steam at any speed within the range set out in the table (the | 467 |
| "ordered speed"). | 468 |
| ~~If the vessel is ordered to proceed at any speed other than the highest speed shown in the~~ | 469 |
| ~~table, and the average speed actually attained by the vessel during the currency of such order~~ | 470 |
| ~~exceeds such ordered speed plus 0.6 knots (the "maximum recognised speed"), then for the~~ | 471 |
| ~~purpose of calculating a decrease of hire under this Clause 24 the maximum recognised speed~~ | 472 |
| ~~shall be used in place of the average speed actually attained.~~ | 473 |
| ~~For the purposes of this charter the "guaranteed speed" at any time shall be the then current~~ | 474 |
| ~~ordered speed or the service speed, as the case may be.~~ | 475 |
| The average speeds and bunker consumptions shall for the purposes of this Clause 24 be | 476 |
| calculated by reference to the observed distance from pilot station to pilot station on all sea | 477 |
| passages during each period stipulated in Clause 24 (c), but excluding any time during which | 478 |
| the vessel is (or but for Clause 22 (b) (i) would be) off-hire and also excluding "Adverse | 479 |
| Weather Periods", being; | 480 |
| (i)  any periods during which reduction of speed is necessary for safely in congested waters | 481 |
| or in poor visibility; | 482 |
| (ii)  any days, noon to noon, when winds exceed force ~~8~~ *4 (four)* on the Beaufort Scale for more than | 483 |
| 12 hours. | 484 |
| (b) If ~~during any year from~~ the date on which the vessel enters service ~~(anniversary to anniversary)~~ | 485 |
| the vessel falls below ~~or exceeds~~ the performance guaranteed in Clause 24 (a) then if such | 486 |
| shortfall ~~or excess~~ results; | 487 |
| (i)  from a reduction ~~or an increase~~ in the average speed of the vessel, compared to the speed | 488 |
| guaranteed in Clause 24 (a), then an amount equal to the value at the hire rate of the time | 489 |
| so lost ~~or gained, as the case may be,~~ shall be ~~included in the performance calculation~~ *deducted* | 490 |
| *from the hire paid;* | |
| (ii)  from an increase ~~or a decrease~~ in the total bunkers consumed, compared to the total | 491 |
| bunkers which would have been consumed had the vessel performed as guaranteed in | 492 |
| Clause 24 (a), an amount equivalent to the value of the additional bunkers consumed ~~or~~ | 493 |
| ~~the bunkers saved, as the case may be,~~ based on the average price paid by Charterers for | 494 |
| the vessel's bunkers in such period, shall be ~~included in the performance calculation~~ *deducted from* | 495 |
| *the hire paid.* | |
| The ~~results of the performance calculation~~ *deduction from hire so calculated* for laden and ballast | 496 |
| mileage respectively shall be | |
| adjusted to take into account the mileage steamed in each such condition during Adverse Weather | 497 |
| Periods, by dividing such addition or deduction by the number of miles over which the | 498 |
| performance has been calculated and multiplying by the same number of miles plus the miles | 499 |
| steamed during the Adverse Weather Periods, in order to establish the total ~~performance~~ | 500 |
| ~~calculation~~ *deduction* for such period. | 501 |
| Reduction of hire under the foregoing sub-Clause (b) shall be without prejudice to any other | 502 |
| remedy available to Charterers. | 503 |
| ~~(c) Calculations under this Clause 24 shall be made for the yearly periods terminating on each~~ | 504 |
| ~~successive anniversary of the date on which the vessel enters service, and for the period~~ | 505 |
| ~~between the last such anniversary and the date of termination of this charter if less than a year.~~ | 506 |
| Claims in respect of reduction of hire arising under this Clause during the final year or part | 507 |
| year of the charter period shall in the first instance be settled in accordance with Charterers' | 508 |
| estimate ~~made two months before the end of the charter period~~. Any necessary adjustment | 509 |
| after this charter terminates shall be made by payment by Owners to Charterers ~~or by~~ | 510 |
| ~~Charterers to Owners as the case may require.~~ | 511 |
| (d) Owners and Charterers agree that this Clause 24 is assessed on the basis that Owners are not | 512 |
| entitled to additional hire for performance in excess of the speeds and consumptions given in | 513 |
| this Clause 24. | 514 |

|   | | | |
|---|---|---|---|
| Salvage | 25. | Subject to the provisions of Clause 21 hereof, all loss of time and all expenses (excluding any | 515 |
| | | damage to or loss of the vessel or tortious liabilities to third parties) incurred in saving or attempting | 516 |
| | | to save life or in successful or unsuccessful attempts at salvage shall be borne equally by Owners and | 517 |
| | | Charterers provided that Charterers shall not be liable to contribute towards any salvage payable by | 518 |
| | | Owners arising in any way out of services rendered under this Clause 25 . | 519 |
| | | All salvage and all proceeds from derelicts shall be divided equally between Owners and Charterers | 520 |
| | | after deducting the master's, officers' and crew's share. | 521 |
| Lien | 26. | Owners shall have a lien upon all cargoes and all freights, sub-freights and demurrage for any | 522 |

This Charter Party is a computer generated SHELLTIME 4 form printed using software which is the copyright of STRATEGIC DATAWORKS LTD. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the text of the original approved document shall apply. STRATEGIC DATAWORKS LTD assume no responsibility for any loss or damage caused as a result of any discrepancies between the original approved document and this document.
WWW.STRATEGICDATAWORKS.CO.UK

| | |
|---|---:|
| amounts due under this charter; and Charterers shall have a lien on the vessel for all monies paid in | 523 |
| advance and not earned, and for all claims for damages arising from any breach by Owners of this | 524 |
| charter. | 525 |

**Exceptions** 27. (a) The vessel, her master and Owners shall not, unless otherwise in this charter expressly | 526
provided, be liable for any loss or damage or delay or failure arising or resulting from any | 527
act, neglect or default of the master, pilots, mariners or other servants of Owners in the | 528
navigation or management of the vessel; fire, unless caused by the actual fault or privity of | 529
Owners; collision or stranding; dangers and accidents of the sea; explosion, bursting of | 530
boilers, breakage of shafts or any latent defect in hull, equipment or machinery; provided, | 531
however, that Clauses 1, 2, 3 and 24 hereof shall be unaffected by the foregoing. Further, | 532
neither the vessel, her master or Owners, nor Charterers shall, unless otherwise in this charter | 533
expressly provided, be liable for any loss or damage or delay or failure in performance | 534
hereunder arising or resulting from act of God, act of war, seizure under legal process, | 535
quarantine restrictions, strikes, lock-outs, riots, restraints of labour, civil commotions or arrest | 536
or restraint of princes, rulers or people. | 537

(b) The vessel shall have liberty to sail with or without pilots, to tow or go to the assistance of | 538
vessels in distress and to deviate for the purpose of saving life or property. | 539

(c) Clause 27(a) shall not apply to, or affect any liability of Owners or the vessel or any other | 540
relevant person in respect of; | 541

(i) loss or damage caused to any berth, jetty, dock, dolphin, buoy, mooring line, pipe or | 542
crane or other works or equipment whatsoever at or near any place to which the vessel | 543
may proceed under this charter, whether or not such works or equipment belong to | 544
Charterers, or; | 545

(ii) any claim (whether brought by Charterers or any other person) arising out of any loss | 546
of or damage to or in connection with cargo. Any such claim shall be subject to the | 547
Hague-Visby Rules or the Hague Rules or the Hamburg Rules, as the case may be, | 548
which ought pursuant to Clause 38 hereof to have been incorporated in the relevant | 549
Bill of Lading (whether or not such Rules were so incorporated) or, if no such Bill of | 550
Lading is issued, to the Hague-Visby Rules unless the Hamburg Rules compulsorily | 551
apply in which case to the Hamburg Rules. | 552

(d) In particular and without limitation, the foregoing subsections (a) and (b) of this Clause | 553
shall not apply to or in any way affect any provision in this charter relating to off-hire or to | 554
reduction of hire. | 555

**Injurious Cargoes** 28. No acids, explosives or cargoes injurious to the vessel shall be shipped and without prejudice to the | 556
foregoing any damage to the vessel caused by the shipment of any such cargo, and the time taken to | 557
repair such damage, shall be for Charterers' account. No voyage shall be undertaken, nor any goods | 558
or cargoes loaded, that would expose the vessel to capture or seizure by rulers or governments. | 559

**Grade of Bunkers** 29. Charterers shall supply fuel oil with a maximum viscosity of *380* centistokes at 50 degrees | 560
centigrade *according to RMG-35* and/or marine diesel oil for main propulsion and *marine diesel oil* | 561
fuel oil with a maximum viscosity of

~~centistokes at 50 degrees centigrade and/or diesel oil~~ for the auxiliaries. If Owners | 562
require the vessel to be supplied with more expensive bunkers they shall be liable for the extra cost | 563
thereof. | 564
Charterers warrant that all bunkers provided by them in accordance herewith shall be of a quality | 565
complying with ISO Standard 8217 for Marine Residual Fuels and Marine Distillate Fuels as | 566
applicable. | 567

**Disbursements** 30. Should the master require advances for ordinary disbursements at any port, Charterers or their agents | 568
shall make such advances to him, in consideration of which Owners shall pay a commission of two and | 569
a half per cent, and all such advances and commission shall be deducted from hire. | 570

**Laying-up** 31. Charterers shall have the option, after consultation with Owners, of requiring Owners to lay up the | 571
vessel at a safe place ~~nominated by~~ *mutually agreed between Owners and* Charterers, in which case the | 572
hire provided for under this charter

shall be adjusted to reflect any net increases in expenditure reasonably incurred or any net saving | 573
which should reasonably be made by Owners as a result of such lay up. Charterers may exercise the | 574
said option any number of times during the charter period. | 575

**Requisition** 32. Should the vessel be requisitioned by any government, de facto or de jure, during the period of this | 576
charter, the vessel shall be off-hire during the period of such requisition, and any hire paid by such | 577
governments in respect of such requisition period shall be for Owners' account. Any such requisition | 578
period shall count as part of the charter period. | 579

**Outbreak of War** 33. If war or hostilities break out between any two or more of the following countries: U.S.A., the | 580
countries or republics having been part of the former U.S.S.R (except that declaration of war or | 581
hostilities solely between any two or more of the countries or republics having been part of the | 582
former USSR shall be exempted), P.R.C., U.K.~~,~~ ~~Netherlands,~~ *Germany* then both Owners and Charterers | 583
shall

have the right to cancel this charter. | 584

This Charter Party is a computer generated SHELLTIME 4 form printed using software which is the copyright of STRATEGIC DATAWORKS LTD. Any insertion or deletion to the form must be
clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the text of the original approved document shall apply. STRATEGIC
DATAWORKS LTD assume no responsibility for any loss or damage caused as a result of any discrepancies between the original approved document and this document.
WWW.STRATEGICDATAWORKS.CO.UK

| Additional War Expenses | 34. If the vessel is ordered to trade in areas where there is war (de facto or de jure) or threat of war, Charterers shall reimburse Owners for any additional insurance premia, crew bonuses and other expenses which are reasonably *actually* incurred by Owners as a consequence of such orders, provided that Charterers are given notice of such expenses as soon as practicable and in any event before such expenses are incurred, and provided further that Owners obtain from their insurers a waiver of any subrogated rights against Charterers in respect of any claims by Owners under their war risk insurance arising out of compliance with such orders. | 585 586 587 588 589 590 591 |
|---|---|---|
| | Any payments by Charterers under this clause will only be made against proven documentation. Any discount or rebate refunded to Owners, for whatever reason, in respect of additional war risk premium shall be passed on to Charterers. | 592 593 594 |
| War Risks | 35. (a) The master shall not be required or bound to sign Bills of Lading for any place which in his or Owners' reasonable opinion is dangerous or impssible for the vessel to enter or reach owing to any blockade, war, hostilities, warlike operations, civil war, civil commotions or revolutions. | 595 596 597 598 |
| | (b) If in the reasonable opinion of the master or Owners it becomes, for any of the reasons set out in Clause 35(a) or by the operation of international law, dangerous, impossible or prohibited for the vessel to reach or enter, or to load or discharge cargo at, any place to which the vessel has been ordered pursuant to this charter (a "place of peril"), then Charterers or their agents shall be immediately notified in writing or by radio messages, and Charterers shall thereupon have the right to order the cargo, or such part of it as may be affected, to be loaded or discharged, as the case may be, at any other place within the trading limits of this charter (provided such other place is not itself a place of peril). If any place of discharge is or becomes a place of peril, and no orders have been received from Charterers or their agents within 48 hours after dispatch of such messages, then Owners shall be at liberty to discharge the cargo or such part of it as may be affected at any place which they or the master may in their or his discretion select within the trading limits of this charter and such discharge shall be deemed to be due fulfilment of Owners' obligations under this charter so far as cargo so discharged is concerned. | 599 600 601 602 603 604 605 606 607 608 609 610 611 612 |
| | (c) The vessel shall have liberty to comply with any directions or recommendations as to departure, arrival, routes, ports of call, stoppages, destinations, zones, waters, delivery or in any other wise whatsoever given by the government of the state under whose flag the vessel sails or any other government or local authority or by any person or body acting or purporting to act as or with the authority of any such government or local authority including any de facto government or local authority or by any person or body acting or purporting to act as or with the authority of any such government or local authority or by any committee or person having under the terms of the war risks insurance on the vessel the right to give any such directions or recommendations. If by reason of or in compliance with any such directions or recommendations anything is done or is not done, such shall not be deemed a deviation. | 613 614 615 616 617 618 619 620 621 622 |
| | If by reason of or in compliance with any such direction or recommendation the vessel does not proceed to any place of discharge to which she has been ordered pursuant to this charter, the vessel may proceed to any place which the master or Owners in his or their discretion select and there discharge the cargo or such part of it as may be affected. Such discharge shall be deemed to be due fulfilment of Owners' obligations under this charter so far as cargo so discharged is concerned. | 623 624 625 626 627 628 |
| | Charterers shall procure that all Bills of Lading issued under this charter shall contain the Chamber of Shipping War Risks Clause 1952. | 629 630 |
| Both to Blame Collision Clause | 36. If the liability for any collision in which the vessel is involved while performing this charter falls to be determined in accordance with the laws of the United States of America, the following provision shall apply: | 631 632 633 |
| | "If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in the management of the ship, the owners of the cargo carried hereunder will indemnify the carrier against all loss, or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of the said cargo, paid or payable by the other or non-carrying ship or her owners to the owners of the said cargo and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier." | 634 635 636 637 638 639 640 641 |
| | "The foregoing provisions shall also apply where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contact." | 642 643 644 |
| | Charterers shall procure that all Bills of Lading issued under this charter shall contain a provision in the foregoing terms to be applicable where the liability for any collision in which the vessel is involved falls to be determined in accordance with the laws of the United States of America. | 645 646 647 |
| New Jason Clause | 37. General average contributions shall be payable according to York/Antwerp Rules, 1994, as amended from time to time, and shall be adjusted in London in accordance with English law and practice but should adjustment be made in accordance with the law and practice of the United States of America, | 648 649 650 |

This Charter Party is a computer generated SHELLTIME 4 form printed using software which is the copyright of STRATEGIC DATAWORKS LTD. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the text of the original approved document shall apply. STRATEGIC DATAWORKS LTD assume no responsibility for any loss or damage caused as a result of any discrepancies between the original approved document and this document.
WWW.STRATEGICDATAWORKS.CO.UK

| | | |
|---|---|---|
| | the following position shall apply: | 651 |

"In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible by statute, contract or otherwise, the cargo, shippers, consignees or owners of the cargo shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo." — 652–657

"If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the cargo and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the cargo to the carrier before delivery." — 658–662

Charterers shall procure that all Bills of Lading issued under this charter shall contain a provision in the foregoing terms, to be applicable where adjustment of general average is made in accordance with the laws and practice of the United States of America. — 663–665

**Clause Paramount**
38. Charterers shall procure that all Bills of Lading issued pursuant to this charter shall contain the following: — 666–667

"(1)Subject to sub-clause (2) or (3) hereof, this Bill of Lading shall be governed by, and have effect subject to, the rules contained in the International Convention for the Unification of Certain Rules relating to Bills of Lading signed at Brussels on 25th August 1924 (hereafter the "Hague Rules") as amended by the Protocol signed at Brussels on 23rd February 1968 (hereafter the "Hague-Visby Rules"). Nothing contained herein shall be deemed to be either a surrender by the carrier of any of his rights or immunities or any increase of any of his responsibilities or liabilities under the Hague-Visby Rules." — 668–674

"(2)If there is governing legislation which applies the Hague Rules compulsorily to this Bill of Lading, to the exclusion of the Hague-Visby Rules, then this Bill of Lading shall have effect subject to the Hague Rules. Nothing therein contained shall be deemed to be either a surrender by the carrier of any of his rights or immunities or an increase of any of his responsibilities or liabilities under the Hague Rules." — 675–679

(3) If there is governing legislation which applies the United Nations Convention on the Carriage of Goods by Sea 1978 (hereafter the Hamburg Rules) compulsorily to this Bill of Lading, to the exclusion of the Hague-Visby Rules, then this Bill of Lading shall have effect subject to the Hamburg Rules. Nothing therein contained shall be deemed to be either a surrender by the carrier of any of his rights or immunities or an increase of any of his responsibilities or liabilities under the Hamburg Rules." — 680–685

"(4)If any term of this Bill of Lading is repugnant to the Hague-Visby Rules, or Hague Rules, or Hamburg Rules, as applicable, such term shall be void to that extent but no further." — 686–687

"(5)Nothing in this Bill of Lading shall be construed as in any way restricting, excluding or waiving the right of any relevant party or person to limit his liability under any available legislation and/or law." — 688–690

**Insurance/ ITOPF**
39. Owners warrant that the vessel is now, and will, throughout the duration of the charter: *See also Clauses 63 and 64* — 691

(a) be owned or demise chartered by a member of the International Tanker Owners Pollution Federation Limited; — 692–693

(b) be properly entered in ~~P & I Club, being a member of~~ the International Group of P and I Clubs; — 694–695

(c) have in place insurance cover for oil pollution for the maximum on offer through the International Group of P&I Clubs but always a minimum of United States Dollars 1,000,000,000 (one thousand million); — 696–698

(d) have in full force and effect Hull and Machinery insurance placed through reputable brokers on Institute Time Clauses or equivalent for the value of United States Dollars           as from time to time may be amended with Charterers approval, which shall not be unreasonably withheld. — 699–702

Owners will provide, within a reasonable time following a request from Charterers to do so, documented evidence of compliance with the warranties given in this Clause 39. — 703–704

**Export Restrictions**
40. The master shall not be required or bound to sign Bills of Lading for the carriage of cargo to any place to which export of such cargo is prohibited under the laws, rules or regulations of the country in which the cargo was produced or shipped. — 705–707

Charterers shall procure that all Bills of Lading issued under this charter shall contain the following clause: — 708–709

"If any laws rules or regulations applied by the government of the country in which the cargo was produced and/or shipped, or any relevant agency thereof, impose a prohibition on export of the cargo to the place of discharge designated in or ordered under this Bill of Lading, carriers shall be entitled to require cargo owners forthwith to nominate an alternative discharge place for the discharge of the cargo, or such part of it as may be affected, which alternative place shall not be subject to the prohibition, and carriers shall be entitled to accept orders from cargo owners to proceed to and — 710–715

This Charter Party is a computer generated SHELLTIME 4 form printed using software which is the copyright of STRATEGIC DATAWORKS LTD. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the text of the original approved document shall apply. STRATEGIC DATAWORKS LTD assume no responsibility for any loss or damage caused as a result of any discrepancies between the original approved document and this document.
WWW.STRATEGICDATAWORKS.CO.UK

discharge at such alternative place. If cargo owners fail to nominate an alternative place within 72 | 716
hours after they or their agents have received from carriers notice of such prohibition, carriers shall | 717
be at liberty to discharge the cargo or such part of it as may be affected by the prohibition at any safe | 718
place on which they or the master may in their or his absolute discretion decide and which is not | 719
subject to the prohibition, and such discharge shall constitute due performance of the contract | 720
contained in this Bill of Lading so far as the cargo so discharged is concerned". | 721
The foregoing provision shall apply mutatis mutandis to this charter, the references to a Bill of | 722
Lading being deemed to be references to this charter. | 723

**Business Principles** 41. Owners will co-operate with Charterers to ensure that the Business Principles, as amended | 724
from time to time, of the Royal Dutch/Shell Group of Companies, which are posted on the Shell | 725
Worldwide Web (www.Shell.com), are complied with. | 726

**Drugs and Alcohol** 42. (a) Owners warrant that they have in force an active policy covering the vessel which meets or | 727
exceeds the standards set out in the "Guidelines for the Control of Drugs and Alcohol On | 728
Board Ship" as published by the Oil Companies International Marine Forum (OCIMF) dated | 729
January 1990 (or any subsequent modification, version, or variation of these guidelines) and | 730
that this policy will remain in force throughout the charter period, and Owners will exercise | 731
due diligence to ensure the policy is complied with. | 732
(b) Owners warrant that the current policy concerning drugs and alcohol on board is acceptable | 733
to ExxonMobil and will remain so throughout the charter period. | 734

**Oil Major Acceptability** 43. If, at any time during the charter period, the vessel becomes unacceptable to any Oil Major, Charterers | 735
shall have the right to terminate the charter. *See clause 65.* | 736

**Pollution and Emergency Response** 44. Owners are to advise Charterers of organisational details and names of Owners personnel together | 737
with their relevant telephone/facsimile/e-mail/telex numbers, including the names and contact details | 738
of Qualified Individuals for OPA 90 response, who may be contacted on a 24 hour basis in the event of | 739
oil spills or emergencies. | 740

**ISPS Code/US MTSA 2002** 45. (a) (i)  From the date of coming into force of the International Code for the Security of Ships | 741
and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS | 742
Code) and the US Maritime Transportation Security Act 2002 (MTSA) in relation to the | 743
Vessel and thereafter during the currency of this charter, Owners shall procure that both | 744
the Vessel and "the Company" (as defined by the ISPS Code) and the owner(as | 745
defined by the MTSA) shall comply with the requirements of the ISPS Code relating to | 746
the Vessel and "the Company" and the requirements of MTSA relating to the vessel and | 747
the owner. Upon request Owners shall provide documentary evidence of compliance | 748
with this Clause 45(a) (i). | 749
(ii) Except as otherwise provided in this charter, loss, damage, expense or delay, caused by | 750
'failure on the part of Owners or "the Company"/owner to comply with the | 751
requirements of the ISPS Code/MTSA or this Clause shall be for Owners' account. | 752
(b) (i)  Charterers shall provide Owners/Master with their ful style contact details and shall | 753
ensure that the contact details of all sub-charterers are likewise provided to | 754
Owners/Master. Furthermore, Charterers shall ensure that all sub-charter parties they | 755
enter into during the period of this charter contain the following provision: | 756
"The Charterers shall provide the Owners with their full style contact details and, where | 757
sub-letting is permitted under the terms of the charter party, shall ensure that the | 758
contact details of all sub-charterers are likewise provided to the Owners". | 759
(ii) Except as otherwise provided in this charter, loss, damage, expense or delay, caused by | 760
failure on the part of Charterers to comply with this <u>sub-Clause  45(b)</u> shall be for | 761
Charterers' account. | 762
(c) Notwithstanding anything else contained in this charter costs or expenses related to security | 763
regulations or measures required by the port facility or any relevant authority in accordance | 764
with the ISPS Code/MTSA including, but not limited to, security guards, launch services, tug | 765
escorts, port security fees or taxes and inspections, shall be for Charterers' account, unless such | 766
costs or expenses result solely from Owners' negligence in which case such costs or expenses | 767
shall be for Owners account. All measures required by Owners to comply with the security | 768
plan required by the ISPS Code/MTSA shall be for Owners' account. | 769
(d) Notwithstanding any other provision of this charter, the vessel shall not be off-hire where there | 770
is a loss of time caused by Charterers failure to comply with the ISPS Code/MTSA(when in | 771
force ). | 772
(e) If either party makes any payment which is for the other party's account according to this | 773
Clause, the other party shall indemnify the paying party. | 774

**Law and Litigation** 46. (a) This charter shall be construed and the relations between the parties determined in accordance | 775
with the laws of England. | 776
(b) All disputes arising out of this charter shall be referred to Arbitration in London in accordance | 777
with the Arbitration Act 1996 (or any re-enactment or modification thereof for the time being | 778
in force) subject to the following appointment procedure: | 779
(i)  The parties shall jointly appoint a sole arbitrator not later than 28 days after service of | 780
a request in writing by either party to do so. | 781

This Charter Party is a computer generated SHELLTIME 4 form printed using software which is the copyright of STRATEGIC DATAWORKS LTD. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the text of the original approved document shall apply. STRATEGIC DATAWORKS LTD assume no responsibility for any loss or damage caused as a result of any discrepancies between the original approved document and this document.
WWW.STRATEGICDATAWORKS.CO.UK

(ii) ~~If the parties are unable or unwilling to agree the appointment of a sole arbitrator in~~ 782
~~accordance with (i) then each party shall appoint one arbitrator, in any event not later~~ 783
~~than 14 days after receipt of a further request in writing by either party to do so. The~~ 784
~~two arbitrators so appointed shall appoint a third arbitrator before any substantive~~ 785
~~hearing or forthwith if they cannot agree on a matter relating to the arbitration;~~ 786
(iii) ~~If a party fails to appoint an arbitrator within the time specified in (ii) (the Party in~~ 787
~~Default), the party who has duly appointed his arbitrator shall give notice in writing to~~ 788
~~the Party in Default that he proposes to appoint his arbitrator to act as sole arbitrator.~~ 789
(iv) ~~If the Party in Default does not within 7 days of the notice given pursuant to (iii) make~~ 790
~~The required appointment and notify the other party that he has done so the other party~~ 791
~~may appoint his arbitrator as sole arbitrator whose award shall be binding on both~~ 792
~~parties as if he had been so appointed by agreement.~~ 793
(v) ~~Any Award of the arbitrator(s) shall be final and binding and not subject to appeal.~~ 794
(vi) ~~For the purposes of this clause 46(b)any requests or notices in writing shall be sent~~ 795
~~by fax, e-mail or telex and shall be deemed received on the day of transmission.~~ 796
(c) ~~It shall be a condition precedent to the right of any party to a stay of any legal proceedings in~~ 797
~~which maritime property has been, or may be, arrested in connection with a dispute under this~~ 798
~~charter, that that party furnishes to the other party security to which that other party would~~ 799
~~have been entitled in such legal proceedings in the absence of a stay.~~ 800
*BIMCO STANDARD DISPUTE RESOLUTION CLAUSE - see attached clause 73.*

Confidentiality 47. All terms and conditions of this charter arrangement shall be kept private and confidential 801
Construction 48. The side headings have been included in this charter for convenience of reference and shall in no 802
way affect the construction hereof. 803
Appendix A: OCIMF Vessel Particulars Questionnaire for the vessel, as attached, shall be 804
incorporated herein. 805
Appendix B: Shell Safety and Environmental Monthly Reporting Template, as attached, shall be 806
incorporated herein. 807
Additional Clauses: *49 through 75 both inclusive* As attached, shall be incorporated herein. 808
*IN WITNESS WHEREOF, THE PARTIES HAVE CAUSED THIS*
*CHARTER, CONSISTING OF PART A CLAUSES 1 THROUGH 48 AND*
*PART B, CLAUSES 49 THROUGH 75 TO BE EXECUTED IN DUPLICATE*

SIGNED FOR OWNERS                    SIGNED FOR CHARTERERS 809
FULL NAME _____              FULL    NAME  _____ 810
POSITION                            POSITION 811

# SHELLTIME4

| Shell Safety and Environmental Monthly Reporting Template | Return to:_____<br>Charterers marked for the attention of:_____<br>Fax:_____<br>Phone:_____<br>Email:_____ |
|---|---|

| Time Chartered Vessel Name | _____ |
|---|---|
| Management Company | _____ |
| Month | _____ |

| OIL SPILLS INCIDENTS<br>(Any amount entering the water)<br>Approximate volume in barrels and brief details | _____ |
|---|---|
| ANY OTHER INCIDENTS<br>resulting in or having potential for injury, damage or loss | _____ |

FOR DEFINITIONS OF INCIDENT CLASSIFICATION AND EXPOSURE HOURS PLEASE SEE OIL COMPANIES INTERNATIONAL MARINE FORUM (OCIMF) BOOKLET "Marine Injury Reporting Guidlines" (February 1997) or any subsequent version, amendment, or variation to them

| A. No. Of Crew: | _____ |
|---|---|
| B. Days in month / period: | _____ |
| EXPOSURE HOURS (A x B x 24): | _____ |

| LOST TIME INJURIES (LTI'S) including brief details / any treatments |
|---|
| _____ |

| TOTAL RECORDABLE CASE INJURIES (TRC'S) including brief details / any treatments |
|---|
| _____ |

PLEASE CONFIRM YOUR RETURN CONTACT DETAILS:

| Name: _____ |
|---|
| Phone: _____ |
| Fax: _____ |
| Email: _____ |

Return for each calendar month - by 10th of following month.

| Shell Safety and Environmental Monthly Reporting Template | Return to: ____<br>Charterers marked for the attention of: _____<br>Fax: _____<br>Phone: _____<br>Email: _____ |
|---|---|

| Time Chartered Vessel Name | _____ |
|---|---|
| Management Company | _____ |
| Month | _____ |

Notes:  Please enter zero i.e."0" where any amount is nil (rather than entering "Nil" or N/A")
Please do not enter a % sign in the entry boxes for Fuel Sulphur content i.e. if it is 3% then just enter "3".
Cargo loaded for LNG vessels should also be reported as tonnes and not as m3.

| Monthly Consumption - Fuel Oil mt | _____ |
|---|---|
| Sulphur content of Fuel Oil (percentage weight) | _____ |
| Monthly Consumption - Diesel and/or Gas Oil mt | _____ |
| Monthly Consumption (LNG ships only) - Fuel Gases mt | _____ |

Please do not enter a % sign in the entry boxes for Fuel Sulphur content i.e. if it is 3% then just enter 3".
Cargo loaded for LNG vessels should also be reported as tonnes and not as m3.

| Monthly Distance Steamed | _____ |
|---|---|
| Monthly Cargo Loaded - mt | _____ |

| Refrigerant Gas Consumption - Type | _____ |
|---|---|
| Refrigerant Gas Consumption - Quantity (litres) | _____ |

| Garbage Disposal m3 - At Sea | _____ |
|---|---|
| Garbage Disposal m3 - Incinerated on Board | _____ |
| Garbage Disposal m3 - Sent Ashore | _____ |

| OIL SPILL INCIDENTS (Other than those entering the water) Approx. volume & brief details | _____ |
|---|---|

## Clause 49

In the event of loss of time due to blockades or boycott of the vessel in any port or place by spore labor or others (whether arising government restrictions or not) by reason of :

A)    The vessel's flag or ownership;
B)    The terms and conditions on which the members of the crew are employed;
C)    The trading of any other vessel under same ownership;
D)    Any proven physical or documentary deficiency in the relation to the vessels safety, cargo gear, or other equipment as on board;

Then payment of hire shall cease for the time hereby lost.


## Clause 50

Safety equipment on board the vessel shall be as per class requirements and flag administration regulations for ships of similar size, type and trading area. Owners warrant to operate vessel in accordance with Charterers' time charter instructions and all applicable international regulations, including but not limited to "ISM Code" and "OCIMF Drug and Alcohol policy".
Owners warrant that all class and trading certificates will be on board valid and un-expired throughout the entire period of the charter.
It is understood that the Vessel shall always be in class and that deficiencies and / or recommendations shall be attended to without undue delay, except for those recommendations that can be safely postponed 10 next scheduled dry-docking. The Vessel shall not be excluded from calling any ports due to deficiencies/recommendations given by port state control. All certificates shall be maintained throughout the Charter

## Clause 51

The vessel to be equipped with radios with suitable frequencies. Vessel will maintain watch on communication equipment on board in order to enable flexibility and fast responses concerning cargo plans, alterations of destinations, deviations and any other similar kind of commercial requirements. Vessel to be equipped with E-Mail and telex and telefax communication.

## Clause 52

The master, officers and crew shall be employed by the Owners and/or the ship managers. The vessel, master, and crew must carry out commercial operations with utmost dispatch.
All officers shall be able to give good working command in the English language. All crew shall have proper knowledge of the English language.
2/3 of the crew always including Master and Senior Officers shall have experience and knowledge of running chemical tankers.

Vessel is to load quantity as instructed by the Charterers and always in accordance with the vessel's cargo tank capacity and the Master never to accept any other quantity than that specified by Charterers in their voyage orders.

## Clause 53

Gangway watchmen to be for Owners' account. Fire watchmen to be for Owners' account if so requested by Master and/or Owners or to be for Charterers' account if compulsory by port/other authorities.

## Clause 54

Owners shall keep the Vessel sufficiently and properly manned to efficiently perform all duties and functions normally connected to chemical parcel, general liquid chemicals and petroleum products trade including but not necessarily limited to loading, discharging, transferring of cargo and/or ballast, rigging cargo Bear, and sweeping and cleaning tanks. Multiple, simultaneous operations are expected. It is understood and agreed that the above mentioned duties and functions shall be done at sea as well as in port. In this connection, the master shall prosecute his voyage with utmost dispatch and shall render all reasonable assistance with the Vessel's crew and equipment.
During the currency of this charter Owners to keep a good house-holding on board the vessel and keep the ship clean everywhere including but not limited to on deck, the outside, in the accommodation and in the engine room.

Clause 55

Tank cleaning within the parcel tanker and genera liquid products trade includes washing, mopping and drying and other duties and functions required to make the tank(s) suitable for the next cargo. Tank cleaning includes a broad scope of methods, which may be required in some instances: it may include washing with high-pressure nozzles rigged from deck (butterworthing); it may require crew members to enter the tanks and physically scrape and remove any rust, scale or foreign matter that can be injurious to the intended cargo; it may include gas freeing; it may require application of tank cleaning chemicals or solvent with either spraying equipment or through the vessel's fixed tank washing equipment. These examples are not complete as it is always the responsibility of the Owners and the crew to follow Charterers customary to the trade voyage orders and cleaning instructions which shall always be provide timely and appropriately to the master along with the voyage orders in orderly format.

Tank cleaning shall always be performed as early after completion of discharging as possible.

The vessel's crew is, when required by Charterers, to perform sweeping (squeegeeing) of cargo tanks, which is defined as part of the final discharge operation whereby the crew agitates, mixes and physically pushes or squeegees the cargo to the suction pipe when required by the Charterers. This particular operation shall be paid by Charterers at USD100,- per tank per sweeping operation to the Master directly.
Subsequent to washing cargo tanks with seawater, the tanks shall always be flushed with fresh water.

All necessary cleaning equipment and chemicals to be supplied and paid for by Charterers.

Clause 56

Ballasting will when possible be done concurrent with discharging-operation and will in no way disturb or interrupt the discharge or in any other way cause delays to effective operation of the vessel, subject to terminal regulations.
De-ballasting will when possible be done concurrent with loading operation and will in no way disturb or interrupt the loading or in any other way cause delays to effective operation of the vessel, subject to terminal regulations.

## Clause 57

The Charterers shall have the option of loading over top i.e. through the dock hatches. In such case, the distribution of the cargo throughout the Vessel shall be undertaken by Master, connecting the hoses on board the Vessel is to be performed by the Vessel's crew, provided this operation is not in conflict with law and safety regulations of port authorities, always at Master's discretion related to safety of ship and crew and the environment. Any additional equipment and or costs related to such operation far Charterers' account. Charterers confirm they will be responsible for the risk.

Any STS operations shall always be performed in a safe port or place suitable for the intended operation and shall always be in accordance with OCIMF guidelines for STS operations, A11 fenders, hoses, mooring loading master, if required, and associated equipments to be for Charterers account and to be supplied by them.

## Clause 58

The vessel shall during discharge operations be able to maintain 100 PSI at vessel's manifold provided shore facilities permit.

During discharge operations the vessel shall maintain pumping logs and issue letters of protest if so required and the crew shall make best endeavours to have both countersigned by the terminal.

Should it become necessary lo withdraw the vessel from the berth as a result of vessel being unable to discharge the cargo at its warranted capacity, all time so lost as well as shifting expenses to anchorage to be for Owners' account. To clarify the principle agreed between the parties, time and shifting expense to anchorage shall not be for Owners account if reduced discharge capacity is caused by restrictions at shore, vessel is allowed to discharge freely through all manifolds into 10" lines, notwithstanding cargo is one grade or several (within vessels natural segregation. Le, time and expense for shifting to anchorage shall only be for Owners account if the reduced discharge capacity is caused solely by technical problems onboard the vessel.

## Clause 59

Vessel to be equipped with 4 cargo hoses each of 8-inch diameter and each of 10 meters length. Hoses must be duly pressure tested and certified with intervals of no more than 12 months.

Cargo manifold must comply with the applicable OCIMF rules for oil tankers of similar size and type. All flanges to be of ANSI standard.

Personnel on board are always to be made available to Charterers to load or discharge as many grades of cargo simultaneously as the vessel can separate as per the OCIMF

Cont'd Clause 59

Questionnaire.

Owners agree that without causing delays to the vessel the Master and Crew will connect/disconnect cargo hoses and bunker hoses on board Vessel only at both loading and discharging ports provided this operation is not in conflict with international law and safety regulations of port authorities and to take and keep on board cargo samples from vessels sample taps as per Charterers' instructions, within capacity of Vessel's cargo sample bottles,

Clause 60

If Charterers require cargo heating, the vessel shall, on passage to and whilst at discharging port(s), maintain the cargo at the loaded temperature or at the temperature stated in Charterers voyage instructions always in accordance with the cargo resistance list and the capabilities of the heating system. Charterers may request that the temperature of the cargo be raised above or lowered below that at which it was loaded, in which event Owners shall use their best endeavors to comply)' with such request.

Clause 61

Deleted.

Clause 62

(a)     The Vessel shall not be obliged to force ice nor to follow ice-breakers.

(b)     The Vessel shall not be required to enter or remain in any icebound port or area, nor any port or area where lights, lightships, markers or buoys have been or are about to he withdrawn by reason of ice, nor where on account of ice there is, in the Master's sole discretion, a risk that, in the ordinary course of events, the Vessel will not be able safely to enter and remain at the port or area or to depart after completion of loading or discharging. If, on account or ice, the Master in Iris sole discretion considers it unsafe to proceed to, enter or remain at the place of loading or discharging for fear of the Vessel being frozen in and/or damaged, he shall be at liberty to sail to the nearest ice-free and safe place and there await the Charterers' instructions.

Cont'd Clause 62

(d)     Any additional premiums and/or calls required by the Vessel's underwriters due to the Vessel entering or remaining in any icebound port or area shall be for the Charterers' account.

(e)     Any costs and expenses actually incurred by the Owners as a result of the vessel trading in ice shall be for Charterers account.

## Clause 63

The Owners warrant that during the currency of this charter the vessel will comply with the following requirements:

A)     The vessel shall have P and I insurance from a recognized P and I club, which is a member of IGA (International Group Agreement),
B)     That P & I insurance premiums are correctly paid,
C)     That the vessel is covered for oil spillage at the highest possible amount with its P & I club which at present is USD 1 billion,
D)     That valid P&I certificates always are on board,
E)     That the vessel will b owned (or demise-chartered or technically managed) by a member of "The International Tanker Owners Pollution Federation Ltd.",
F)     That the Owners will give the Charterers, provided there is no conflict of interest, the full use and coverage of its P and I club services as far as the P and I rules permit.
G)     That upon delivery and again latest 3 days before expiry of each insurance period, Owners to give Charterers copies of P&I certificates for the respective periods.

## Clause 64

The Charterers shall during the currency of this Charter take out and maintain "Charterers' liability insurance" with underwrite. Upon delivery and again latest 3 days before expiry of each insurance period, Charterers to give Owners copies of appropriate insurance certificates for the respective periods.

Clause 65 (Vetting Clause)

VETTING CLAUSE

OWNERS/VESSEL SHALL WARRANT TO OBTAIN CLEAR CDI AND VALID SIRE WITH ACCEPTANCE FROB/I MAJOR OIL COMPANIES WHICH INCLUDE SHELL, BP, EXXONMOBIL, CHEVRONTEXACO AND PETRONAS. OWNERS ACKNOWLEDGE THAT SOME OF THESE COMPANIES HAVE ESTABLISHED ROUTINES FOR APPROVAL BASED ON CDI INSPECTION PROGRAMME. OWNERS TO ARRANGE FOR INSPECTION AS AND WHEN REQUIRED AT THEIR EXPENSE, EXCEPT THAT MAJOR OIL COMPANIES DO NOT HAVE SPECIFIC COMMERCIAL INTEREST IN THE VESSEL AND CASE OF DECLINE INSPECTION REQUEST.

ALL TIME REQUIRED FOR VETTING INSPECTION SHALL BE ON-HIRE. HOWEVER SHOULD THE VESSEL BE FAILED AND REQUIRED FOR RE-INSPECTION, SUCH TIME AND COST TO BE FOR OWNERS' ACCOUNT UNLESS THE REQUIREMENT OF CHARTERERS AND/OR CARGO INTERESTS ARE APPARENTLY BEYOND THE CLASS RULE OR TREATY.

OWNERS SHALL WARRANT TO ENSURE THREE (3) APPROVALS INCLUDING CDI AND SHELL WITH SIRE WITHIN FOUR (4) MONTHS AND FOUR(4) MAJOR APPROVALS OUT OF SHELL, BP, EXXONMOBIL, CHEVRONTEXACO,BHP AND PETRONAS WITHIN SLX (6) MONTHS AFTER DELIVERY.

CHARTERERS ACKNOWLEDGE THAT OWNERS ARE NOT DEEMED IN BREACH OF THIS CLAUSE IF/WHEN OWNERS MAKE APPROPRIATE CONTACTS TO OIL COMPANY(IES) TO REQUEST FOR THEIR VEITING INSPECTIONS BUT SUCH OWNERS' REQUEST IS DECLINED SOLELY BY OIL COMPANY(IES) REASON. TO BEST OWNERSS KNOWLEDGE AND ALWAYS SUBJECT TO CHANGES IN OIL COMPANYS VETTING POLICIES, THE VESSEL IS APPROVED BY 4 (FOUR) OF ABOVE MAJORS AND OWNERS SHELL MAINTAIN 4 (FOUR) APPROVALS THROUGHOUT THE TIME CHARTER PERIOD.

## Clause 66

Owners warrant that the vessel will be at all times in compliance with the Marpol regulations currently in force and applicable to the vessel basis her construction date or as possibly amended during the charter and is certified to carry Marpol annex I and II cargoes in accordance with vessel's Cargo list and Certificate of Fitness and has corresponding valid certificates at all times on board.

## Clause 67
DELETED

## Clause 68

World wide trade always within IWL but excluding United Nations and E.U. sanctioned and or Embargo countries, Ethiopia, Erithrea, Somalia, Yemen, North Korea, Lebanon, Cuba, Israel, Iraq, Turkish occupuied Cyprus, Sierra Leone, Liberia.

## Clause 69

Clean petroleum products including lubricating oils; dirty petroleum products including crude oils; Marpol Annex II cargoes in accordance with vessel's Certificate of Fitness and coating resistance list which please forward for Charterers' approval.
If Charterers so requests, Owners agree to add named cargo(es) to vessel's Certificate of Fitness provided coating manufacturers and/or classification society approve same. Additional costs, if any, to be for Charterers' account.
Alt cargoes carried shall be in accordance with cargo resistance list, maximum allowable temperature, and trim and stability booklet and within natural segregation.
Vessel to be redelivered to Owners with last 3 (three) cargoes clean unl, und 2.5 NPA.

## Clause 70

Owner's guarantee that the vessel's officers and crew belong to a union recognized and affiliated to The International Transport Worker's Federation and / or its equivalent.

## Clause 71

If Charterers have reason to be dissatisfied with the performance of the vessel or the Manager, the Owner upon receiving complaints shall immediately investigate and take appropriate steps to correct the situation.

<u>Clause 72</u>

Managers of the vessel shall be "BERNHARD SCHULTE SHIPMANAGEMENT".

Clause 73

Dispute Resolution Clause
English Law, London Arbitration

(a) This Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced.

The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.

In cases where neither the claim nor any counterclaim exceeds the sum of USD 50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced.

(b) Notwithstanding the above, the parties may agree at any time to refer to mediation any difference and/or dispute arising out of or in connection with this Contract.

In the case of a dispute in respect of which arbitration has been commenced under the above, the following shall apply:-

(i)  Either party may at any time and from time to time elect to refer the dispute or part of the dispute to mediation by service on the other party of a written notice (the "Mediation Notice") calling on the other party to agree to mediation.

(ii)  The other party shall thereupon within 14 calendar days of receipt of the Mediation Notice confirm that they agree to mediation, in which case the parties shall thereafter agree a mediator within a further 14 calendar days, failing which on the application of either party a mediator will be appointed promptly by the Arbitration Tribunal ("the Tribunal") or such person as the Tribunal may designate for that purpose.  The mediation shall be conducted in such place and in accordance with such procedure and on such terms as the parties may agree or, in the event of disagreement, as may be set by the mediator.

(iii)  If the other party does not agree to mediate, that fact may be brought to the attention of the Tribunal and may be taken into account by the Tribunal when allocating the costs of the arbitration as between the parties.

(iv)  The mediation shall not affect the right of either party to seek such relief or take such steps as it considers necessary to protect its interest.

(v)  Either party may advise the Tribunal that they have agreed to mediation. The arbitration procedure shall continue during the conduct of the mediation but the Tribunal may take the mediation timetable into account when setting the timetable for steps in the arbitration.

(vi)  Unless otherwise agreed or specified in the mediation terms, each party shall bear its own costs incurred in the mediation and the parties shall share equally the mediator's costs and expenses.

(vii)  The mediation process shall be without prejudice and confidential and no information or documents disclosed during it shall be revealed to the Tribunal except to the extent that they are disclosable under the law and procedure governing the arbitration.

**PERFORMANCE:**
No underperformance claim to be presented by the Charterers in the first 3 months. Speed and consumptions to be reviewed, actualized and guaranteed by the Owners after 3 months. No overperformance claim to be allowed.
After the first three months the parties agree that harterers shall not claim underperformance if the difference in consumption is less than 5% per day. If there is a difference in excess of 5% per day any claim to be in respect of the excess amount only. Fuel prices for performance shall be average prices paid. The warranted speeds and consumptions are only applicable when sailing in unresticted waters between sea buoy to sea buoy in moderate weather, up to including force 4 on the Beaufort scale and without adverse current. Any passage from sea buoy to sea buoy less than twenty-four hours duration and passages in restricted waters/rivers etc. as provided elsewhere in this charter are to be excluded from performance warrantees / guarantees. Mgo is to be used whenever necessary in line with normal shipping navigational practices.

Clause 75

**BIMCO ISPS CLAUSE FOR TIME CHARTER PARTIES**

**(a)(i)** From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).
**(ii)** Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.
**(b)(i)** The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:
"The Charterers shall provide the Owners with their full style contact details and, where subletting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-charterers are likewise provided to the Owners".
**(ii)** Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.
**(c)** Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners'

negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

**(d)** If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

**Time Charter Party**
**LONDON** *22nd Sept 2008*

IT IS THIS DAY AGREED between *MESSRS. LEON TRADING SA*      1

of            (hereinafter referred to as "Owners"), being owners    2

of the good motor/steam* vessel called *"LEON II"*, *Charterers have the liberty to change the name of*    3
*the vessel to M.Y. ADRIATIC at Charterer's expense and time. Change of name to be done while*
*the ship is still at the yard and Charterers to pay for change of name maximum Usd. 5,000,00 (five*
*thousand Usd. only)*

(hereinafter referred to as "the vessel") described as per *Clause 1* hereof and *MESSES. VARDHAM APS*    4
of *DENMARK*         (hereinafter referred to as "Charterers"):    5

| | | |
|---|---|---|
| Description And Condition of Vessel | 1. | At the date of delivery of the vessel under this charter and throughout the charter period: |

(a) she shall be classed by a Classification Society which is a member of the International    6, 7
Association of Classification Societies;    8

(b) she shall be in every way fit to carry ~~crude petroleum and/or its products Including cargoes of the types~~    9
~~stated in clause 69 hereof;~~ *See clause 69 hereof*

(c) she shall be tight, staunch, strong, in good order and condition, and in every way fit for the    10
service, with her machinery, boilers, hull and other equipment (including but not limited to hull    11
stress calculator, radar, computers and computer systems) in a good and efficient state;    12

(d) her tanks, valves and pipelines shall be oil-tight;    13

(e) she shall be in every way fitted for burning, in accordance with the grades specified in *Clause*    14
*29* hereof:    15

    (i) at sea, fuel oil for main propulsion and fuel oil/marine diesel oil* for auxiliaries;    16

    (ii) in port, fuel oil/marine diesel oil* for auxiliaries;    17

(f) she shall comply with the regulations in force so as to enable her to pass through the Suez and    18
Panama Canals by day and night without delay;    19

(g) she shall have on board all certificates, documents and equipment required from time to time by    20
any applicable law to enable her to perform the charter service without delay;    21

(h) she shall comply with the description in the *Timecharter Description* OCIMF Harmonised Vessel    22
Particulars Questionnaire appended

hereto as Appendix A, provided however that if there is any conflict between the provisions of    23
this questionnaire and any other provision, including this *Clause 1*, of this charter such other    24
provisions shall govern;    25

(i) her ownership structure, flag, registry, classification society and management company shall    26
not be changed;    27, 28

(j) Owners will operate:    28

| | | |
|---|---|---|
| Safety Management | | |

    (i) a safety management system certified to comply with the International Safety    29
Management Code (ISM Code) for the Safe Operation of Ships and for    30
Pollution Prevention;    31

    (ii) a documented safe working procedures system (including procedures for the    32
identification and mitigation of risks);    33

    (iii) a documented environmental management system;    34

    (iv) documented accident/incident reporting system compliant with flag state    35
requirements;    36

(k) Owners shall submit to Charterers a monthly written report detailing all accidents/incidents and    37
environmental reporting requirements, in accordance with the Shell Safety and Environmental    38
Monthly Reporting Template appended hereto as Appendix B;    39

(l) Owners shall maintain Health Safety Environmental (HSE) records sufficient to demonstrate    40
compliance with the requirements of their HSE system and of this charter. Charterers reserve    41
the right to confirm compliance with HSE requirements by audit of Owners.    42

(m) Owners will arrange at their expense for a SIRE inspection to be carried out at intervals of six    43
months plus or minus thirty days, *subject to vessel's schedule and trading area/pattern and to*    44
*availability of sire inspector (see also Clause 65).*

| | | |
|---|---|---|
| Shipboard Personnel And their Duties | 2. | (a) At the date of delivery of the vessel under this charter and throughout the charter period: |

    (i) she shall have a full and efficient complement of master, officers and crew for a    45, 46
vessel of her tonnage, who shall in any event be not less than the number required    47
by the laws of the flag state and who shall be trained to operate the vessel and her    48
equipment competently and safely;    49

    (ii) all shipboard personnel shall hold valid certificates of competence in accordance    50
with the requirements of the law of the flag state;    51

This Charter Party is a computer generated SHELLTIME 4 form printed using software which is the copyright of STRATEGIC DATAWORKS LTD. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the text of the original approved document shall apply. STRATEGIC DATAWORKS LTD assume no responsibility for any loss or damage caused as a result of any discrepancies between the original approved document and this document.
WWW.STRATEGICDATAWORKS.CO.UK

periodical drydocking and *Charterers* shall take all reasonable steps to make the vessel available as near to       402

such date *and port* as practicable.       403

Owners shall put the vessel in drydock at their expense as soon as practicable after Charterers place the vessel at Owners' disposal clear of cargo other than tank washings and residues.       404 / 405

Owners shall be responsible for and pay for the disposal into reception facilities of such tank washings and residues and shall have the right to retain any monies received therefor, without prejudice to any claim for loss of cargo under any Bill of Lading or this charter.       406 / 407 / 408

(b) If a periodical drydocking is carried out in the port offered by Charterers (which must have suitable accommodation for the purpose and reception facilities for tank washings and residues), the vessel shall be off-hire from the time she arrives at such port until drydocking is completed and she is in every way ready to resume Charterers' service and is at the position at which she went off-hire or a position no less favourable to Charterers, whichever she first attains. However;       409 / 410 / 411 / 412 / 413 / 414

   (i) provided that Owners exercise due diligence in gas-freeing, any time lost in gas-freeing to the standard required for entry into drydock for cleaning and painting the hull shall not count as off-hire, whether lost on passage to the drydocking port or after arrival there (notwithstanding Clause 21), and;       415 / 416 / 417 / 418

   (ii) any additional time lost in further gas-freeing to meet the standard required for hot work or entry to cargo tanks shall count as off-hire, whether lost on passage to the drydocking port or after arrival there.       419 / 420 / 421

Any time which, but for sub-clause (i) above, would be off-hire, shall not be included in any calculation under Clause 24.       422 / 423

The expenses of gas-freeing, including without limitation the cost of bunkers, shall be for Owners account.       424 / 425

(c) If Owners require the vessel, instead of proceeding to the offered port, to carry out periodical drydocking at a special port selected by them, the vessel shall be off-hire from the time when she is released to proceed to the special port until she next presents for loading in accordance with Charterers' instructions, provided, however, that Charterers shall credit Owners with the time which would have been taken on passage at the service speed had the vessel not proceeded to drydock. All fuel consumed shall be paid for by Owners but Charterers shall credit Owners with the value of the fuel which would have been used on such notional passage calculated at the guaranteed daily consumption for the service speed, and shall further credit Owners with any benefit they may gain in purchasing bunkers at the special port.       426 / 427 / 428 / 429 / 430 / 431 / 432 / 433 / 434

(d) Charterers shall, insofar as cleaning for periodical drydocking may have reduced the amount of tank-cleaning necessary to meet Charterers' requirements, credit Owners with the value of any bunkers which Charterers calculate to have been saved thereby, whether the vessel drydocks at an offered or a special port.       435 / 436 / 437 / 438

**Ship Inspection**    23. Charterers shall have the right at any time during the charter period to make such inspection of the vessel as they may consider necessary. This right may be exercised as often and at such intervals as Charterers in their absolute discretion may determine and whether the vessel is in port or on passage. Owners affording all necessary co-operation and accommodation on board provided, however:       439 / 440 / 441 / 442

(a) that neither the exercise nor the non-exercise, nor anything done or not done in the exercise or non-exercise, by Charterers of such right shall in any way reduce the master's or Owners' authority over, or responsibility to Charterers or third parties for, the vessel and every aspect of her operation, nor increase Charterers' responsibilities to Owners or third parties for the same; and;       443 / 444 / 445 / 446 / 447

(b) that Charterers shall not be liable for any act, neglect or default by themselves, their servants or agents in the exercise or non-exercise of the aforesaid right.       448 / 449

**Detailed**    24. (a) Owners guarantee that the speed and consumption of the vessel shall be as follows:- *See Clause 74 hereof*       450

**Description and Performance**    *Owners warrant vessel's speed of*    knots in laden condition and    knots in ballast condition on 19 metric tons IFO for main engine.

| Average speed in knots | Maximum average main propulsion fuel oil/ diesel oil tonnes | bunker consumption per day auxiliaries fuel oil/diesel oil tonnes | |
|---|---|---|---|
| Laden | / | / | 451 / 452 / 453 / 454 |
| | / | / | 455 |
| | / | / | 456 |
| | / | / | 457 |
| Ballast | / | / | 458 |
| | / | / | 459 |
| | / | / | 460 |
| | / | / | 461 |

*As per vessel's estimated speed and consumptions given to Charterers.*

The foregoing bunker consumptions are for all purposes except cargo heating and tank cleaning       462

This Charter Party is a computer generated SHELLTIME 4 form printed using software which is the copyright of STRATEGIC DATAWORKS LTD. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the text of the original approved document shall apply. STRATEGIC DATAWORKS LTD assume no responsibility for any loss or damage caused as a result of any discrepancies between the original approved document and this document.
WWW.STRATEGICDATAWORKS.CO.UK

and *ballasting and deballasting and* shall be pro-rated between the speeds shown.   463

The service speed of the vessel is   knots laden and   knots in ballast and in the absence  464
of Charterers' orders to the contrary the vessel shall proceed at the service speed. However if  465
more than one laden and one ballast speed are shown in the table above Charterers shall have  466
the right to order the vessel to steam at any speed within the range set out in the table (the  467
"ordered speed").   468

~~If the vessel is ordered to proceed at any speed other than the highest speed shown in the~~  469
~~table, and the average speed actually attained by the vessel during the currency of such order~~  470
~~exceeds such ordered speed plus 0.5 knots (the "maximum recognised speed"), then for the~~  471
~~purposes of calculating a decrease of hire under this Clause 24, the maximum recognised speed~~  472
~~shall be used in place of the average speed actually attained.~~  473

~~For the purposes of this charter the "guaranteed speed" at any time shall be the then current~~  474
~~ordered speed or the service speed, as the case may be.~~  475

The average speeds and bunker consumptions shall for the purposes of this Clause 24 be  476
calculated by reference to the observed distance from pilot station to pilot station on all sea  477
passages during each period stipulated in Clause 24 (c), but excluding any time during which  478
the vessel is (or but for Clause 22 (b) (i) would be) off-hire and also excluding "Adverse  479
Weather Periods", being;   480

  (i)   any periods during which reduction of speed is necessary for safety in congested waters  481
     or in poor visibility;   482

  (ii)   any days, noon to noon, when winds exceed force *(four)* 4 on the Beaufort Scale for more than  483
     12 hours.   484

(b)  If ~~during any year~~ from the date on which the vessel enters service ~~(anniversary to anniversary)~~  485
  the vessel falls below or exceeds the performance guaranteed in Clause 24 (a) then if such  486
  shortfall ~~or excess~~ results;   487

  (i)   from a reduction ~~or an increase~~ in the average speed of the vessel, compared to the speed  488
     guaranteed in Clause 24 (a), then an amount equal to the value at the hire rate of the time  489
     so lost ~~or gained, as the case may be,~~ shall be ~~included in the performance calculation~~ *deducted*  490
     *from the hire paid;*   

  (ii)   from an increase ~~or a decrease~~ in the total bunkers consumed, compared to the total  491
     bunkers which would have been consumed had the vessel performed as guaranteed in  492
     Clause 24 (a), an amount equivalent to the value of the additional bunkers consumed ~~or~~  493
     ~~the bunkers saved, as the case may be,~~ based on the average price paid by Charterers for  494
     the vessel's bunkers in such period, shall be ~~included in the performance calculation~~ *deducted from*  495
     *the hire paid.*   

~~The results of the performance calculation~~ *deduction from hire so calculated* for laden and ballast  496
mileage respectively shall be   
adjusted to take into account the mileage steamed in each such condition during Adverse Weather  497
Periods, by dividing such addition or deduction by the number of miles over which the  498
performance has been calculated and multiplying by the same number of miles plus the miles  499
steamed during the Adverse Weather Periods, in order to establish the total ~~performance~~  500
~~calculation~~ *deduction* for such period.   501

Reduction of hire under the foregoing sub-Clause (b) shall be without prejudice to any other  502
remedy available to Charterers.   503

(c)  ~~Calculations under this Clause 24 shall be made for the yearly periods terminating on each~~  504
  ~~successive anniversary of the date on which the vessel enters service, and for the period~~  505
  ~~between the last such anniversary and the date of termination of this charter if less than a year.~~  506

Claims in respect of reduction of hire arising under this Clause during the final year or part  507
year of the charter period shall in the first instance be settled in accordance with Charterers'  508
estimate made ~~two months before the end of the charter period.~~ Any necessary adjustment  509
after this charter terminates shall be made by payment by Owners to Charterers or by  510
~~Charterers to Owners as the case may require.~~   511

(d)  Owners and Charterers agree that this Clause 24 is assessed on the basis that Owners are not  512
  entitled to additional hire for performance in excess of the speeds and consumptions given in  513
  this Clause 24.   514

**Salvage**  25.  Subject to the provisions of Clause 21 hereof, all loss of time and all expenses (excluding any  515
damage to or loss of the vessel or tortious liabilities to third parties) incurred in saving or attempting  516
to save life or in successful or unsuccessful attempts at salvage shall be borne equally by Owners and  517
Charterers provided that Charterers shall not be liable to contribute towards any salvage payable by  518
Owners arising in any way out of services rendered under this Clause 25 .   519

All salvage and all proceeds from derelicts shall be divided equally between Owners and Charterers  520
after deducting the master's, officers' and crew's share.   521

**Lien**  26.  Owners shall have a lien upon all cargoes and all freights, sub-freights and demurrage for any  522
amounts due under the charter; and Charterers shall have a lien on the vessel for all monies paid in  523

This Charter Party is a computer generated SHELLTIME 4 form printed using software which is the copyright of STRATEGIC DATAWORKS LTD. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the text of the original approved document shall apply. STRATEGIC DATAWORKS LTD assume no responsibility for any loss or damage caused as a result of any discrepancies between the original approved document and this document.
WWW.STRATEGICDATAWORKS.CO.UK

~~accordance with (i) then each party shall appoint one arbitrator, in any event not later~~ 783
~~than 14 days after receipt of a further request in writing by either party to do so. The~~ 784
~~two arbitrators so appointed shall appoint a third arbitrator before any substantive~~ 785
~~hearing or forthwith if they cannot agree on a matter relating to the arbitration.~~ 786
(iii) ~~If a party fails to appoint an arbitrator within the time specified in (ii) (the Party in~~ 787
~~Default), the party who has duly appointed his arbitrator shall give notice in writing to~~ 788
~~the Party in Default that he proposes to appoint his arbitrator to act as sole arbitrator.~~ 789
(iv) ~~If the Party in Default does not within 7 days of the notice given pursuant to (iii) make~~ 790
~~The required appointment and notify the other party that he has done so the other party~~ 791
~~may appoint his arbitrator as sole arbitrator whose award shall be binding on both~~ 792
~~parties as if he had been so appointed by agreement.~~ 793
(v) ~~Any Award of the arbitrator(s) shall be final and binding and not subject to appeal.~~ 794
(vi) ~~For the purposes of this clause 46(b)any requests or notices in writing shall be sent~~ 795
~~by fax, e-mail or telex and shall be deemed received on the day of transmission.~~ 796
(c) ~~It shall be a condition precedent to the right of any party to a stay of any legal proceedings in~~ 797
~~which maritime property has been, or may be, arrested in connection with a dispute under this~~ 798
~~charter, that that party furnishes to the other party security to which that other party would~~ 799
~~have been entitled in such legal proceedings in the absence of a stay.~~ 800
*BIMCO STANDARD DISPUTE RESOLUTION CLAUSE - see attached clause 73.*

| | | |
|---|---|---|
| Confidentiality | 47. All terms and conditions of this charter arrangement shall be kept private and confidential | 801 |
| Construction | 48. The side headings have been included in this charter for convenience of reference and shall in no | 802 |
| | way affect the construction hereof. | 803 |
| Appendix A: | OCIMF Vessel Particulars Questionnaire for the vessel, as attached, shall be | 804 |
| | incorporated herein. | 805 |
| Appendix B: | Shell Safety and Environmental Monthly Reporting Template, as attached, shall | 806 |
| | be incorporated herein – 75 | 807 |
| Additional Clauses: | *49 through 73 both inclusive* As attached, shall be incorporated herein. | 808 |

*IN WITNESS WHEREOF, THE PARTIES HAVE CAUSED THIS CHARTER, CONSISTING OF PART A CLAUSES 1 THROUGH 48 AND PART B, CLAUSES 49 THROUGH 73 TO BE EXECUTED IN DUPLICATE*

75

| | |
|---|---|
| SIGNED FOR OWNERS | SIGNED FOR CHARTERERS | 809 |
| FULL NAME _____ | FULL NAME _____ | 810 |
| POSITION | POSITION | 811 |

As per authority from Vardhman
Shipping ApS

As agents only

**HOLGER KRISTIANSEN'S EFTF A/S**

KRISAX

Marina House
Remsgade 4 - 4800 Nykøbing F

<u>Clause 66</u>

Owners warrant that the vessel will be at all times in compliance with the Marpol regulations currently in force and applicable to the vessel basis her construction date or as possibly amended during the charter and is certified to carry Marpol annex I and II cargoes in accordance with vessel's Cargo list and Certificate of Fitness and has corresponding valid certificates at all times on board.

<u>Clause 67</u>

Deleted



## Clause 68

World wide trade always within IWL but excluding United Nations and E.U. sanctioned and or Embargo countries, Ethiopia, Erithrea, Somalia, Yemen, North Korea, Lebanon, Cuba, Israel, Iraq, Turkish occupuied Cyprus, Sierra Leone, Liberia.

## Clause 69

Clean petroleum products including lubricating oils; dirty petroleum products including crude oils; Marpol Annex II cargoes in accordance with vessel's Certificate of Fitness and coating resistance list which please forward for Charterers' approval.
If Charterers so requests, Owners agree to add named cargo(es) to vessel's Certificate of Fitness provided coating manufacturers and/or classification society approve same. Additional costs, if any, to be for Charterers' account.
Alt cargoes carried shall be in accordance with cargo resistance list, maximum allowable temperature, and trim and stability booklet and within natural segregation.
Vessel to be redelivered to owners with last (3) cargoes clean UNL, UND 2,5 NPA

## Clause 70

Owner's guarantee that the vessel's officers and crew belong to a union recognized and affiliated to The International Transport Worker's Federation and / or its equivalent.

## Clause 71

If Charterers have reason to be dissatisfied with the performance of the vessel or the Manager, the Owner upon receiving complaints shall immediately investigate and take appropriate steps to correct the situation.

<u>Clause 73</u>

Dispute Resolution Clause
English Law, London Arbitration

(a)  This Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced.

The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified.  If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly.  The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.

In cases where neither the claim nor any counterclaim exceeds the sum of USD 50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced.

(b)  Notwithstanding the above, the parties may agree at any time to refer to mediation any difference and/or dispute arising out of or in connection with this Contract.

In the case of a dispute in respect of which arbitration has been commenced under the above, the following shall apply:-

(i) Either party may at any time and from time to time elect to refer the dispute or part of the dispute to mediation by service on the other party of a written notice (the "Mediation Notice") calling on the other party to agree to mediation.

(ii) The other party shall thereupon within 14 calendar days of receipt of the Mediation Notice confirm that they agree to mediation, in which case the parties shall thereafter agree a mediator within a further 14 calendar days, failing which on the application of either party a mediator will be appointed promptly by the Arbitration Tribunal ("the Tribunal") or such person as the Tribunal may designate for that purpose. The mediation shall be conducted in such place and in accordance with such procedure and on such terms as the parties may agree or, in the event of disagreement, as may be set by the mediator.

(iii) If the other party does not agree to mediate, that fact may be brought to the attention of the Tribunal and may be taken into account by the Tribunal when allocating the costs of the arbitration as between the parties.

(iv) The mediation shall not affect the right of either party to seek such relief or take such steps as it considers necessary to protect its interest.

(v) Either party may advise the Tribunal that they have agreed to mediation. The arbitration procedure shall continue during the conduct of the mediation but the Tribunal may take the mediation timetable into account when setting the timetable for steps in the arbitration.

(vi) Unless otherwise agreed or specified in the mediation terms, each party shall bear its own costs incurred in the mediation and the parties shall share equally the mediator's costs and expenses.

(vii) The mediation process shall be without prejudice and confidential and no information or documents disclosed during it shall be revealed to the Tribunal except to the extent that they are disclosable under the law and procedure governing the arbitration.

(Note: The parties should be aware that the mediation process may not necessarily interrupt time limits.)



Dispute Resolution Clause
U.S. Law, New York Arbitration

(a) This Contract shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and any dispute arising out of or in connection with this Contract shall be referred to three persons at New

York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for the purposes of enforcing any award, judgment may be entered on an award by any court of competent jurisdiction. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc.

In cases where neither the claim nor any counterclaim exceeds the sum of USD 50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc. current at the time when the arbitration proceedings are commenced.

(b) Notwithstanding the above, the parties may agree at any time to refer to mediation any difference and/or dispute arising out of or in connection with this Contract.

In the case of a dispute in respect of which arbitration has been commenced under the above, the following shall apply:-

(i) Either party may at any time and from time to time elect to refer the dispute or part of the dispute to mediation by service on the other party of a written notice (the "Mediation Notice") calling on the other party to agree to mediation.

(ii) The other party shall thereupon within 14 calendar days of receipt of the Mediation Notice confirm that they agree to mediation, in which case the parties shall thereafter agree a mediator within a further 14 calendar days, failing which on the application of either party a mediator will be appointed promptly by the Arbitration Tribunal ("the Tribunal") or such person as the Tribunal may designate for that purpose. The mediation shall be conducted in such place and in accordance with such procedure and on such terms as the parties may agree or, in the event of disagreement, as may be set by the mediator.

(iii) If the other party does not agree to mediate, that fact may be brought to the attention of the Tribunal and may be taken into account by the Tribunal when allocating the costs of the arbitration as between the parties.

(iv) The mediation shall not affect the right of either party to seek such relief or take such steps as it considers necessary to protect its interest.

(v) Either party may advise the Tribunal that they have agreed to mediation. The arbitration procedure shall continue during the conduct of the mediation but the Tribunal may take the mediation timetable into account when setting the timetable for steps in the arbitration.

(vi) Unless otherwise agreed or specified in the mediation terms, each party shall bear its own costs incurred in the mediation and the parties shall share equally the mediator's costs and expenses.

(vii) The mediation process shall be without prejudice and confidential and no information or documents disclosed during it shall be revealed to the Tribunal except to the extent that they are disclosable under the law and procedure governing the arbitration.

(Note: The parties should be aware that the mediation process may not necessarily interrupt time limits.)

Dispute Resolution Clause
Law and Place of Arbitration as Mutually Agreed

(a) This Contract shall be governed by and construed in accordance with the laws of the place mutually agreed by the parties and any dispute arising out of or in connection with this Contract shall be referred to arbitration at a mutually agreed place, subject to the procedures applicable there.

(b) Notwithstanding the above, the parties may agree at any time to refer to mediation any difference and/or dispute arising out of or in connection with this Contract.

In the case of a dispute in respect of which arbitration has been commenced under the above, the following shall apply:-

(i) Either party may at any time and from time to time elect to refer the dispute or part of the dispute to mediation by service on the other party of a written notice (the "Mediation Notice") calling on the other party to agree to mediation.

(ii) The other party shall thereupon within 14 calendar days of receipt of the Mediation Notice confirm that they agree to mediation, in which case the parties shall thereafter agree a mediator within a further 14 calendar days, failing which on the application of either party a mediator will be appointed promptly by the Arbitration Tribunal ("the Tribunal") or such person as the Tribunal may designate for that purpose. The mediation shall be conducted in such place and in accordance with such procedure and on such terms as the parties may agree or, in the event of disagreement, as may be set by the mediator.

(iii) If the other party does not agree to mediate, that fact may be brought to the attention of the Tribunal and may be taken into account by the Tribunal when allocating the costs of the arbitration as between the parties.

(iv) The mediation shall not affect the right of either party to seek such relief or take such steps as it considers necessary to protect its interest.

(v) Either party may advise the Tribunal that they have agreed to mediation. The arbitration procedure shall continue during the conduct of the mediation but the Tribunal may take the mediation timetable into account when setting the timetable for steps in the arbitration.

(vi) Unless otherwise agreed or specified in the mediation terms, each party shall bear its own costs incurred in the mediation and the parties shall share equally the mediator's costs and expenses.

(vii) The mediation process shall be without prejudice and confidential and no information or documents disclosed during it shall be revealed to the Tribunal except to the extent that they are disclosable under the law and procedure governing the arbitration.

(Note: The parties should be aware that the mediation process may not necessarily interrupt time limits.)

# 74. PERFORMANE

No under – performance claim to be presented by the Charterers in the first three (3) months. Speed and Consumptions to be reviewed, actualized and guaranteed by the Owners after three (3) months. No over-performance claim to be allowed.

After the first three months the parties agree that Charterers shall not claim under-performance if the difference in consumption is less than 5% per day.
If there is a difference in excess of 5% per day any claim to be in respect of the excess amount only. Fuel prices for performance shall be average prices paid. The warranted speeds and consumptions are only applicable when sailing in unrestricted waters between sea buoy to sea buoy in moderate weather, up to and including force 4 on the beaufort scale and without adverse current. Any passage from sea buoy to sea buoy less than twenty-four hours duration and passages in restricted waters/rivers etc. as provided elsewhere in this charter are to be excluded from performance warrantees / guarantees. MGO is to be used whenever necessary in line with normal shipping navigational practices.

# 75. BIMCO ISPS CLAUSE FOR TIME CHARTER PARTIES

(a)(i) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).
(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.
(b)(i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:
"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-charterers are likewise provided to the Owners".
(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.
(c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.
(d) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.