# EXHIBIT 5

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

BETWEEN

| | |
|---|---|
| LEON TRADING SA | **Claimants** |
| | (Owners) |

and

| | |
|---|---|
| M.Y. SHIPPING PRIVATE LTD | **First Respondents** |
| of Mumbai, India | (Charterers) |
| VARDHMAN SHIPPING APS | **Second Respondents** |
| of Denmark | (Charterers) |

## M.T. "M.Y. ADRIATIC" (ex "LEON II")

CHARTER PARTY DATED 22 SEPTEMBER 2008
SIDE LETTER DATED 16 OCTOBER 2008

FIRST FINAL ARBITRATION AWARD

WHEREAS:

1.   By an amended SHELLTIME 4 Charter Party dated 22 September 2008 the Claimants (hereinafter referred to as "the Owners") chartered the "M.Y. ADRIATIC" to the Respondents (hereinafter referred to as "the Charterers") for a timecharter period of one year plus or minus 15 days with the Charterers having the option of a further one year such option declarable latest 60 days prior to the expiry of the first year.

2.   Clause 73 of the said Charter Party provided, inter alia:-

"Dispute Resolution Clause
English Law, London Arbitration

(a)  This Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced.

The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of

such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement...".

3. Disputes did arise between the parties and on 24 April 2009 the Owners' P&I Club in Greece appointed me, the undersigned, Timothy Rayment of 47 Castelnau, London SW13 9RT as arbitrator and on the same date they called upon the Charterers to appoint an arbitrator of their choice within 14 days as provided for by Clause 73. All communications to the Charterers were passed to them through the brokers, Albatross Maritime S.A. ("Albatross").

The Charterers did not respond.

4. Accordingly, on 27 May 2009, on application from the Owners' P&I Cub I sent an email to the Charterers via Albatross advising that I had accepted the appointment as sole arbitrator in accordance with the provisions of Clause 73. I am a Full Member of the London Maritime Arbitrators Association ("LMAA") and The Baltic

Exchange, London.

In that message of 27 May I advised further:-

"I must advise M Y Shipping Private Ltd that English law provides for a Tribunal to proceed to its Award on the Claimants Submissions and Documents alone (providing a case has been made out) if the Respondents (M Y Shipping Private Ltd) refuse or fail to take part in the arbitration procedure.".

5. The seat of this arbitration is England and the LMAA Terms (2006) apply, my having accepted my appointment on the basis of those terms.

6. The Owners claimed a total amount of US$1,631,833.82 in respect of hire, bunker costs at Santos and costs incurred to obtain the release of the vessel from arrest at New Orleans due to unpaid disbursements at Rosario. The amount included interest and they additionally claimed for their costs.

7. Claim submissions were served on 19 August 2009 with the Owners claiming the amount referred to in the paragraph above and they applied for an Interim Award in that sum. The reason for the application, the Owners submitted, was that the Charterers excused their non-payment by blaming their sub-charterers which they contended was no defence.

8. On 14 September, on application from the Owners, I sent an email to the Charterers via Albatross wherein I invited their comments on the Owners' application by 21 September 2009. I advised them that if they did not respond within

that deadline I would assume that they did not wish to make comment and I would proceed to consider the application.

The Charterers did not respond within the time limit or at all.

9. Despite their being given every opportunity to do so, the Charterers did not offer any defence to the claims presented on the Owners' behalf. Notwithstanding that, I considered it my duty to carefully consider the documents and calculations accompanying the Owners' submissions before issuing any Award and that I have done.

10. The following Clauses of the Charter Party are relevant to the issues in this arbitration:-

" 4.(a) Owners agree to let and Charterers agree to hire the vessel for a period of one year plus or minus 15 days in Charterers option, commencing from the time and date of delivery of the vessel, optional year to be declared by Charterers latest 60 days prior to expiry of first year commencing from vessel's delivery date...

7.(a) Charterers shall provide and pay for all fuel (except fuel used for domestic services), towage and pilotage and shall pay agency fees, port charges, commissions, expenses of loading and unloading cargoes, canal dues all taxes and/or dues and/or fees on vessel arising as result of its employment, and or fees on freight, hire, sub-charter hire, cargo and bunkers are to be for Charterer's account and all charges other than those payable by Owners

in accordance with Clause 6 hereof...

8. Subject as herein provided, Charterers shall pay monthly in advance for the use and hire of the vessel at the rate of United States Dollars 12,500.= per day, and pro rata for any part of a day, from the time and date of her delivery (local time) to Charterers until the time of her redelivery (local time) to Owners for the first year; United States Dollars 12,800.= per day, and pro rata for any part of a day for optional year, less 1.25% total commission. Charterers to pay Usd.600 per month for crew overtime. Communications/representaton [sic] at United States Dollars 600 per month, and pro rata for any part of a month.

9. Subject to Clause 3(c) and 3(e), payment of hire shall be made in immediately available funds to...in United States Dollars monthly in advance, less:

   (i) any hire paid which Charterers reasonably estimate to relate to off-hire periods, and;

   (ii) any amounts disbursed on Owners' behalf, any advances and commission thereon, and charges which are for Owners' account pursuant to any provision hereof, and;

   (iii) any amounts due or reasonably estimated to become due to Charterers under Clause 3(c) or 24 hereof,

any such adjustments to be made at the due date for the next monthly payment after the facts

have been ascertained. Charterers shall not be responsible for any delay or error by Owners' bank in crediting Owners' account provided that Charterers have made proper and timely payment...

26. Owners shall have a lien upon all cargoes and all freights, sub-freights and demurrage for any amounts due under this charter...".

11. On 16 October 2008 the parties reached agreement as follows:-

"SIDE LETTER BETWEEN THE CONTRACTED PARTIES LEON TRADING S.A. AND VARDHMAN SHIPPING APS DENMARK.
++++++++++++++++++++++++++++++++++++++++++++++

IT IS TODAY 16/OCT/2008 AGREED BETWEEN OWNERS OF M/T LEON II RENAMED M/T M.Y. ADRIATIC AND THE CHARTERERS VARDHMAN SHIPPING APS DENMARK THE FOLLOWING:

IN THE ORIGINAL CHARTER PARTY, CHARTERERS ON THE TIME CHARTER PARTY, TO APPEAR MESSRS "M.Y. SHIPPING PRIVATE LTD INDIA REGISTERED ADDRESS R.V. SHAHS BUNGALOW, SURENDRANAGAR - 363001 GUJARAT - INDIA OFFICE FULL ADDRESS R.V. SHAHS BUNGALOW, SURENDRANAGAR - 363001 GUJARAT - INDIA.

IRRESPECTIVE OF THE AFOREMENTIONED REQUEST BY VARDHMAN SHIPPING APS DENMARK, VARDHMAN SHIPPING APS DENMARK TO BE RESPONSIBLE FOR THE DUE FULFILMENT AND EXECUTION OF THE CHARTER PARTY AND ALL CHARTERERS OBLIGATIONS ACCORDINGLY."

The document was signed by representatives of

the Owners and the Charterers.

12. The vessel delivered into the Charterers' service at 1624 local time on 14 October 2008.

13. The Owners submitted that the Charterers had specifically, wrongly and in breach of the Charter Party failed:

a) to pay hire as and when due following the 4th hire instalment for the period 14 January 2009 to 14 February 2009 onwards in breach of Clause 8; and

b) to provide and pay for bunkers resulting in the Owners having to bunker the vessel in Santos at a cost to the Owners of US$143,498.36 in breach of Clause 7(a); and

c) to pay for disbursements at Rosario resulting in the Owners being required to pay US$61,370.00 to obtain the vessel's release from arrest at New Orleans in breach of Clause 7(a).

14. **PAYMENT OF HIRE.**

The Owners adduced a copy of their Hire Statement for the period up to 14 August 2009 showing 10 hire instalments which had fallen due since delivery and the document showed a balance due to them of US$1,631,833.82. They submitted that the Charterers failed to pay hire as and when due and they had therefore exercised their right of lien over sub-freights in order to obtain payments direct from sub-charters. These totalled US$1,466,319.75 and credits for the various amounts were shown in the Hire Statement.

15. The Owners adduced copies of all supporting documentation. I was satisfied that the Charterers had persistently failed to pay hire as and when it became due and I found therefore that the Charterers were clearly in breach of Clause 8 of the Charter Party as a result of these failures. The Owners' claim for hire plus interest consequently succeeds in full.

16. **PAYMENT OF BUNKERS.**

Clause 7(a) of the Charter Party provided for the Charterers to pay for bunkers which was in any event the usual practice under a timecharter such as this. However, the Owners submitted that, whilst in Santos, the Charterers failed to stem and pay for bunkers advising the Owners that they had financial problems preventing payment being made. I found that such actions again clearly placed the Charterers in breach of Clause 7(a) and the Owners are entitled to reimbursement of the full amount being claimed for bunkers at Santos.

17. **PAYMENT FOR RELEASE OF VESSEL FROM ARREST.**

The vessel, in compliance with the Charterers' orders, called at Dock Sud on 7 June 2009 and Rosario five days later on 12 June incurring disbursements at each port and the Owners contended that the agents were not paid by the Charterers. Subsequently, on 15 July, the agents demanded US$59,869.00 advising that if they did not receive payment by 17 July they would take legal action which may include the arrest of the vessel.

18. The Owners contended that the Charterers

made no payment to the various demands and accordingly the vessel was arrested at New Orleans at 1651 on 23 July on behalf of the agents pursuing their claim which was by then US$60,574.16. From that moment additional fees of US$30.00 per hour were incurred in respect of the fees of the Appointment of Custodian. In the event, the vessel was released at 1309 on 24 July the Owners having paid the sum of US$61,370.00 and they adduced full supporting documentation.

19. Clause 7(a) provides for the Charterers to settle the agents' account for various items which are always for the account of the Charterers under a timecharter and it was no different in this case. The fees had been incurred and the Charterers had failed to pay the amount called for which resulted in the vessel being arrested at New Orleans. I found the Charterers' failure to settle the agents' account at Dock Sud and Rosario to be a clear breach of Clause 7(a) which had the direct result of the vessel being placed under arrest. Consequently, I decided that the Owners must be entitled to repayment of the sum of US$61,370.00 which amount was caused as a direct result of the Charterers' failure to pay the agents for the disbursement account following the vessel's call at those ports.

20. The total quantum of the Owners' application for an Interim Award was US$1,631,833.82 which included interest up to 14 August 2009. I found that the evidence adduced (there being none to the contrary) overwhelmingly supported their position and the messages from the Charterers to the Owners, such

as they were, clearly made no attempt to deny that monies were owing. They were obviously experiencing financial difficulties. In any event, there could be no realistic defence to any of the individual items for which the Owners were now claiming. In such circumstances I decided to accede to the Owners' application for an Interim Award in the full amount.

21. The Owners claim included interest up to 14 August 2009 and having been successful, I award them interest from that date.

22. The Owners, having been successful, are awarded their costs together with the costs of this my First Final Arbitration Award.

23. **NOW I**, the said arbitrator Timothy Rayment having taken upon myself the burden of this arbitration, having carefully and conscientiously read and considered the submissions and documents submitted on the Owners' behalf and the evidence adduced by them

**DO HEREBY MAKE, ISSUE AND PUBLISH THIS MY FIRST FINAL ARBITRATION AWARD, NAMELY**

**A) I FIND AND HOLD** that the Owners' claim succeeds in full in the amount of US$1,631,833.82.

**B) I THEREFORE AWARD AND ADJUDGE** that the Charterers shall forthwith pay to the Owners the sum of US$1,631,833.82 (one million six hundred and thirty one thousand eight hundred and thirty three United States Dollars and eighty two cents) together with interest thereon at the rate of 4.00 (four) per cent per annum

compounded at three monthly rests from 15 August 2009 until the date of payment in full by the Charterers to the Owners.

**C)** **I FURTHER AWARD AND ADJUDGE** that the Charterers shall bear their own and the Owners' costs in the reference and I reserve to myself the power to determine the Owners' said costs in an Award of Costs if they cannot be agreed together with the costs of this my First Final Arbitration Award which I settle in the sum of GB£2,840.00 (two thousand eight hundred and forty Pounds Sterling) **PROVIDED ALWAYS** that if, in the first instance, the Owners shall have paid any part of the said costs of this my First Final Arbitration Award they shall be entitled to an immediate refund from the Charterers of the sum so paid together with interest thereon at the rate of 4.00 (four) per cent per annum compounded at three monthly rests from the date of payment until the date of repayment in full by the Charterers to the Owners.

**D)** **I DECLARE THAT THIS AWARD** is final as to the matters determined herein and I reserve to myself the power to make a further Award or Awards as may be appropriate in respect of any outstanding differences between the parties.

**GIVEN UNDER MY HAND** on this 22nd day of September 2009.

..................................
Timothy Rayment

..................................
Witness